## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | |
|---|---|
| ROBERT J. GRAY<br>d/b/a DANAGGER RESOURCES<br>10550 Rose Bud Ct<br>McKinney, TX 75072-6542;<br><br>TXC LIMITED LLC<br>5511 State Highway 31 W<br>Tyler, TX 75709-9731<br><br>*Plaintiffs*<br><br>v.<br><br>SIMMONS BANK<br>501 Main Street<br>Pine Bluff, AR 71601<br><br>*Defendant* | Civil Action No. 4:26CV745-BSM<br><br>**FILED**<br>U.S. DISTRICT COURT<br>EASTERN DISTRICT ARKANSAS<br><br>JUL 2 2 2026<br><br>TAMMY H. DOWNS, CLERK<br>By:_____ DEP CLERK<br><br><br>This case assigned to District Judge Miller<br>and to Magistrate Judge Harris |

## COMPLAINT

Plaintiffs ROBERT J. GRAY d/b/a DANAGGER RESOURCES ("GRAY") and TXC LIMITED LLC ("TXC LIMITED") bring this action against Defendant SIMMONS BANK for breach of contract, conversion, replevin, negligence, unjust enrichment, and declaratory relief. Plaintiffs GRAY and TXC LIMITED hereby allege as follows:

## OVERVIEW OF THE ACTION

This action arises from SIMMONS BANK's decision, in February 2026, to freeze Plaintiffs' bank accounts on a coordinated basis, without any discernible legal basis, and without providing advance notice to Plaintiffs. Plaintiffs have repeatedly demanded that SIMMONS BANK lift the freeze and return or permit them to withdraw the funds held in their respective bank accounts (collectively, "Accounts"). Yet SIMMONS BANK has refused to do so. Indeed, SIMMONS BANK, through its counsel, has expressly disclaimed every conceivable justification

for the freeze on the Accounts.  Counsel for SIMMONS BANK has represented that the freeze on the Accounts is not based on any court or administrative order and is unrelated to any ongoing internal review of the Accounts.  Beyond those representations, SIMMONS BANK has provided no meaningful explanation for the basis for the freeze of the Accounts or even a timeline within which SIMMONS BANK may deign to lift the freeze.  SIMMONS BANK's prolonged, baseless, and unjustified freeze of the Accounts constitutes a breach of the parties' deposit agreements; of SIMMONS BANK's express contractual undertaking to act in good faith and with ordinary care; and of the duty of care that SIMMONS BANK owed to the Plaintiffs in managing the Accounts. SIMMONS BANK's wrongful appropriation of Plaintiffs' funds, which has denied Plaintiffs access to their funds without legal justification, also constitutes an intentional, wrongful conversion of those funds and has resulted in SIMMONS BANK's unjust enrichment at the Plaintiffs' expense.

## PARTIES

1.      Plaintiff GRAY is an individual and, for purposes of diversity jurisdiction, a citizen of the State of Texas, domiciled in McKinney, Texas.  GRAY does business as DANAGGER RESOURCES, which is an unincorporated sole proprietorship.

2.      Plaintiff TXC LIMITED is a limited liability company organized and existing under the laws of the State of Texas. The sole members of TXC LIMITED are TIMOTHY BLAKE and WILLIAM DOWNS.  BLAKE is an individual and, for purposes of diversity jurisdiction, a citizen of the State of Texas, domiciled in Argyle, Texas.  DOWNS is an individual and, for purposes of diversity jurisdiction, a citizen of the State of Texas, domiciled in Tyler, Texas.

3.      Defendant SIMMONS BANK is a state-chartered banking corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Pine

2

Bluff, Arkansas. Accordingly, for purposes of diversity jurisdiction, SIMMONS BANK is a citizen of Arkansas located in the Central Division.

**JURISDICTION, VENUE, AND JOINDER**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Plaintiff GRAY is a citizen of Texas for purposes of 28 U.S.C. § 1332(a) because he is an individual domiciled in the State of Texas.

6.      Plaintiff TXC LIMITED is a citizen of Texas for purposes of 28 U.S.C. § 1332(a) because it is a limited liability company organized and existing under the laws of the State of Texas and all its members are citizens of the State of Texas.

7.      Defendant SIMMONS BANK is a citizen of Arkansas because it is incorporated and exists under the laws of the State of Arkansas and has its principal place of business in the State of Arkansas.

8.      For each plaintiff, the amount in controversy against Defendant SIMMONS BANK exceeds the sum or value of $75,000, exclusive of interest and costs. Specifically, Plaintiff GRAY seeks, among other relief, damages and other monetary relief in an amount exceeding $1.7 million, which reflects the approximate balance of funds in GRAY's account that SIMMONS BANK has unlawfully frozen and refused to return to GRAY. Plaintiff TXC LIMITED seeks, among other relief, damages and other monetary relief in an amount exceeding $1.4 million, which reflects the approximate balance of the funds in TXC LIMITED's account that SIMMONS BANK has unlawfully frozen and refused to return to TXC LIMITED.

9.      Personal jurisdiction is proper pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendant SIMMONS BANK is subject to personal jurisdiction in the courts of Arkansas under Ark. Code Ann. § 16-4-101 and because the Court's exercise of personal jurisdiction over SIMMONS BANK satisfies due process.

10.     Arkansas' long-arm statute, Ark. Code Ann. § 16-4-101, provides that the courts of Arkansas shall have personal jurisdiction of all "persons" — which is defined to include "corporations" — and all causes of action or claims for relief "to the maximum extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution." The due process clause of the Fourteenth Amendment, in turn, permits exercise of personal jurisdiction over SIMMONS BANK in Arkansas because SIMMONS BANK is incorporated and has its principal place of business in the State of Arkansas.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because SIMMONS BANK is the only defendant in this case and has its principal place of business in this district and division.

12.     Joinder of Plaintiffs' claims in a single action is proper under Fed. R. Civ. P. 20(a)(1) because Plaintiffs' claims arise out of the same series of transactions or occurrences — SIMMONS BANK's coordinated February 13, 2026 freeze of the Accounts — and present common questions of law and fact.

## FACTUAL ALLEGATIONS

### *Plaintiffs' Accounts at SIMMONS BANK and the TEXITcoin Project*

13.     Beginning in and around 2024, GRAY founded a new digital currency project, TEXITcoin.

4

14.    TEXITcoin was a Layer-1 "proof of work" blockchain. Its native token, TXC, was a digital commodity.

15.    "Hash power" (also known as hash rate) is the total computational power used in a proof-of-work blockchain network to process transactions and solve cryptographic puzzles. It measures how many guesses or calculations a digital miner's hardware can make per second. Generally speaking, the higher a digital asset's network-wide hash power, the more expensive and difficult it becomes for bad actors to manipulate the network and, therefore, the more likely it becomes that the underlying digital asset attracts public interest and appreciates in value.

16.    To increase TEXITcoin's total hash power, GRAY sold digital "Mining Packages" to the public using the brand name MineTXC. The purchase of a Mining Package allowed purchasers to add computational resources to the TEXITcoin network and, in exchange, receive a daily pro rata allocation of the TXC mined by the network proportional to the mining power they had contributed.

17.    GRAY, and others, used the proceeds of the Mining Packages to, among other things, buy the digital mining equipment necessary to increase the network hash power, maintain the operation and infrastructure to support the network, pay utilities and administrative expenses, and engage in promotional and marketing activities.

18.    In and around January 2025, BLAKE himself purchased Mining Packages and thereafter sold Mining Packages to the public in and around Texas and elsewhere in the United States through in and around February 2026.

19.    In and around September 2025, BLAKE started to work at the TEXITcoin project.

20.    On or about May 14, 2025, SIMMONS BANK opened the bank account at issue in this Complaint for TXC LIMITED ("Account X-1660") in Tyler, Texas.

21. BLAKE was a signatory on Account X-1660.

22. In connection with opening Account X-1660, TXC LIMITED submitted and executed a form titled "Account Agreement" (attached hereto as EXHIBIT A) with SIMMONS BANK, which TXC LIMITED's members, including BLAKE, signed on TXC LIMITED's behalf. In the Account Agreement, BLAKE disclosed that TXC LIMITED was a limited liability company and submitted documentation establishing TXC LIMITED's beneficial ownership and other information. In the same Account Agreement, BLAKE, on behalf of TXC LIMITED, also "acknowledge[d] the receipt" and "agree[d] to the terms of" several "agreement(s) and/or disclosure(s)," including (a) SIMMONS BANK's "Terms & Conditions" and (b) SIMMONS BANK's "Funds Availability" disclosure.

23. On or about November 19, 2025, SIMMONS BANK opened the bank account at issue in this Complaint for GRAY ("Account X-3871") at the same Tyler, Texas branch.

24. GRAY was the sole signatory on Account X-3871.

25. In connection with opening Account X-3871, GRAY, like TXC LIMITED, submitted and executed an "Account Agreement" (attached hereto as EXHIBIT B) with SIMMONS BANK. In the Account Agreement, GRAY disclosed that he opened the account for "BUSINESS purpose[s]" and that he was doing business as DANAGGER RESOURCES. In the same Account Agreement, GRAY also "acknowledge[d] the receipt" and "agree[d] to the terms of" several "agreement(s) and/or disclosure(s)," including (a) SIMMONS BANK's "Terms & Conditions" and (b) SIMMONS BANK's "Funds Availability" disclosure.

26. Between in and around May 2025 and in and around February 2026, TXC LIMITED used Account X-1660 to receive funds from purchasers of the above-referenced Mining Packages. Specifically, purchasers of Mining Packages would send their funds to Account X-1660

6

in fiat currency,[1] including U.S. Dollars.  BLAKE would then forward those funds to other accounts to pay MineTXC for the underlying Mining Packages, including by sending the fiat currency either to Account X-3871 or to a leading U.S. cryptocurrency exchange.

27.    Between in and around November 2025 and in and around February 2026, GRAY similarly used Account X-3871 to receive fiat currency for the purchase of Mining Packages. GRAY also used Account X-3871 for the operation of entities associated with the TEXITcoin project.

28.    Both Account X-1660 and Account X-3871 are governed by, among other agreements, SIMMONS BANK's "Terms and Conditions of Your Account" (hereinafter, "Terms and Conditions," attached hereto as EXHIBIT C).  Indeed, the Terms and Conditions — which, as noted, are incorporated by reference in TXC LIMITED's and  GRAY's respective Account Agreements — expressly state: "This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us and related matters."

29.    With respect to Plaintiffs' authority to withdraw funds from their Accounts, the Terms and Conditions provide: "Unless clearly indicated otherwise on your account records, *any of you*, acting alone, who signs to open the account or has authority to make withdrawals *may withdraw or transfer all or any part of your account's available balance at any time*." (emphasis added).  The term "available balance," in turn, is defined broadly to mean "the amount of money in your account that you can use, withdraw, or transfer. The available balance may increase or

---

[1] "Fiat currency" or "fiat money" refers to "all kinds of money that are made legal tender by a government decree or fiat" that is not backed by a physical commodity such as gold or silver. "Fiat money," Brittanica Money, https://www.britannica.com/money/fiat-money (last visited July 21, 2026).

decrease throughout the day based on the account activity. Any holds associated with your account reduce the available balance."

30. The Terms and Conditions also cross-reference SIMMONS BANK's Funds Availability disclosure (or "Your Ability to Withdraw Funds" disclosure) "for more information" about account holders' ability to withdraw their funds. That disclosure — which, as noted, was also incorporated by reference in the Account Agreement and also reprinted in the Terms and Conditions) — declares: "Our policy is to make funds from your cash and check deposits available to you on the first business day after the day we receive your deposit. Electronic direct deposits will be available on the day we receive the deposit. *Once the funds are available, you can withdraw them in cash and we will use the funds to pay checks that you have written.*" (emphasis added). The Funds Availability disclosure further provides: "We will notify you if we delay your ability to withdraw funds for any of [several enumerated] reasons, *and we will tell you when the funds will be available*. They will generally be available no later than the seventh business day after the day of your deposit." (emphasis added).

31. The Terms and Conditions separately set out the process that SIMMONS BANK must follow if it chooses to close a bank account: "We may close this account at any time without prior notice to you. *If we close your account, we will provide reasonable notice to you and tender the funds in the account personally or by mail.* ... Reasonable notice depends on the circumstances, and in some cases such as when we cannot verify your identity or we suspect fraud, it might be reasonable for us to give you notice after the change or account closure becomes effective. For instance, if we suspect fraudulent activity with respect to your account, we might immediately freeze or close your account and then give you notice." (emphasis added). Nothing in this provision authorizes the action of SIMMONS BANK as to the Accounts: the indefinite freeze of

8

the Accounts untethered from any review and without the tender of the underlying funds to Plaintiffs.

32.    Separately, in two sections titled "Legal Actions Affecting Your Account" and "Resolving Account Disputes," the Terms and Conditions set out the limited circumstances in which SIMMONS BANK can impose an indefinite freeze on a bank account.

33.    The "Legal Actions" section provides "If we are served with a subpoena, restraining order, writ of attachment or execution, levy, garnishment, search warrant, or similar order relating to your account (termed "legal action" in this section), we may comply with that legal action.  In our discretion, we may freeze or restrict the assets in the account and not allow any payments out of the account until a final court determination regarding the legal action. We may do these things even if the legal action involves less than all of you."

34.    Similarly, the "Resolving Account Disputes" section provides: "If we become aware of a dispute or claim related to your account, we may, in our sole discretion, freeze your account, place a hold on your account (refuse payment or withdrawal of the funds), or take any other actions described in this section. A dispute or claim includes, but is not limited to, (1) others claiming an interest in your account; (2) a claim arising by operation of law; (3) a dispute between you and another joint owner, you and an authorized signer or similar party; (4) a third party claiming an interest in your account; or (5) any other claim adverse to your own interest. A freeze or hold placed on your account may be for any period of time we believe reasonably necessary to allow a legal proceeding to determine the merits of the claim or until we receive evidence satisfactory to us that the dispute has been resolved."

35.    In contrast, nothing in the Terms and Conditions accords SIMMONS BANK the legal authority to do what it has done:  exercise unfettered discretion to permanently or indefinitely

9

freeze a bank account in the absence of legal process, a court order, or an existing adverse claim to the funds in the Accounts awaiting resolution in a legal proceeding.

36.     Quite the opposite, in the absence of legal process, a court order, or an adverse claim to the funds awaiting judicial resolution, SIMMONS BANK has only two options if it has any concerns with respect to the Accounts: (a) temporarily freeze the account for the time necessary to conduct a reasonable investigation into the account; or (b) close the account and return the funds to their rightful owners.

37.     Any exercise of discretion that SIMMONS BANK retains under the Terms and Conditions is further constrained by its express contractual undertaking, set forth below, to act in good faith and with ordinary care.  Indeed, the Terms and Conditions make this duty an express term of the parties' contract: "[n]othing in this document is intended to vary our duty to act in good faith and with ordinary care when required by law."

38.     The Terms and Conditions also contain a choice of law provision.  It states that "[t]his agreement is subject to applicable federal laws, the laws of the state of Arkansas and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules (except to the extent that this agreement can and does vary such rules or laws)."

*The Texas State Securities Board Action Involving TEXITcoin*

39.     On February 11, 2026, the Texas State Securities Board issued an "Emergency Cease and Desist Order" (the "CDO") against GRAY and certain TEXITcoin-related brands (collectively, "Respondents"), alleging, among other things, that the above-referenced Mining Packages were "securities" within the meaning of Texas law and could not be offered to the public without registration, and that Respondents committed fraud through certain omissions in the sale of Mining Packages.

10

40. Respondents to the CDO vigorously deny and contest the allegations in the CDO, which is set for a contested hearing before the Texas State Securities Board in August 2026. At that hearing, Respondents intend to prove that the Mining Packages were not securities under Texas law. Similarly, Respondents intend to prove the total absence of any fraud in connection with the sale of Mining Packages.

41. Despite taking issue with certain of Respondents' purported omissions in the sale of Mining Packages to the public, the CDO did not purport to identify any affirmatively false statements by GRAY, BLAKE or anyone else. The CDO also did not identify any putative victims or seek any fine, restitution, or disgorgement that might affect the funds available to the Plaintiffs in the Accounts.

### SIMMONS BANK's Unexplained Freeze of the Accounts and Refusal to Unfreeze

42. On February 13, 2026, SIMMONS BANK sent materially identical letters to GRAY and TXC LIMITED. Each letter from SIMMONS BANK informed GRAY and TXC LIMITED, respectively, that SIMMONS BANK had frozen the Accounts.

43. Each letter to GRAY and TXC LIMITED stated: "Simmons Bank has identified potentially fraudulent activity within the above-referenced account that requires additional review, and the bank has frozen the account while that review is ongoing. During the review, the account is not available for any type of transaction, including deposits or withdrawals."

44. Neither letter to GRAY or TXC LIMITED mentioned any legal process, court order, pending adverse claim, or administrative proceeding as the basis for the underlying and unilateral freeze of the Accounts by SIMMONS BANK.

45. Neither letter to GRAY or TXC LIMITED provided a timeline within which SIMMONS BANK's purported "review" of either account may conclude.

11

46.    On May 29, 2026 — approximately three months into SIMMONS BANK's purported "review" of Account X-3871 — GRAY, through counsel, sent a letter to SIMMONS BANK regarding the status of Account X-3871. The letter noted that, despite the lapse of over three months, SIMMONS BANK had neither unfrozen Account X-3871 nor provided any update, explanation, or evidence as to the underlying justification for the freeze. GRAY's letter further explained that, to the extent SIMMONS BANK was basing its freeze on the CDO, that order did not provide a legitimate basis to continue any freeze on Account X-3871. Consistent with the Account Agreement and with the Terms and Conditions incorporated therein, GRAY demanded that SIMMONS BANK either lift the freeze on the account or close the account and return the funds to him.

47.    In subsequent communications, counsel for SIMMONS BANK represented to counsel for GRAY that the freeze of Account X-3871 was *not* related to the CDO. Counsel for SIMMONS BANK similarly represented to counsel for GRAY that the freeze of Account X-3871 was unrelated to any court order or to SIMMONS BANK's internal review of the activity in Account X-3871. Beyond representing that the freeze on Account X-3871 was unrelated to the CDO, any ongoing review of Account X-3871, or any administrative or court order, counsel for SIMMONS BANK repeatedly declined to explain the reason for the underlying freeze. Nor has SIMMONS BANK identified any adverse claim by anyone to the funds in Account X-3871. Despite the acknowledged lack of any court order or similar authorization, counsel for SIMMONS BANK also represented that the freeze on Account X-3871 would not be lifted. In short, counsel for SIMMONS BANK offered GRAY no recourse for SIMMONS BANK's unilateral and unjustified freeze of Account X-3871.

12

48.     In and around June 2026, counsel for BLAKE and GRAY in this matter also inquired with the same counsel for SIMMONS BANK about the status of Account X-1660. Counsel for SIMMONS BANK offered only the same explanation for Account X-1660 as that for Account X-3871: the freeze was not based on any court order, the CDO, or any internal review by SIMMONS BANK.  Again, counsel for SIMMONS BANK did not mention or identify any adverse claim to the funds.  And, again, despite the acknowledged lack of any court order or similar authorization, counsel for SIMMONS BANK represented that the freeze on Account X-1660 would not be lifted.  In short, counsel for SIMMONS BANK similarly offered TXC LIMITED no recourse for SIMMONS BANK's unilateral and unjustified freeze of Account X-1660.

49.     Despite GRAY's and TXC LIMITED's repeated demands, SIMMONS BANK has refused to unfreeze the Accounts or return the funds held in those Accounts.

50.     Upon information and belief, the approximate balances of Account X-3871 and Account X-1660 are $1.7 million and $1.4 million, respectively.

51.     Since SIMMONS BANK's unilateral freeze of the Accounts, Plaintiffs cannot access the balance of the Accounts or the transaction history of the Accounts, conduct any activity with the Accounts, or withdraw funds.

52.     But for the freezes arbitrarily imposed and not lifted by SIMMONS BANK on the Accounts, these funds would have long been available — and would now be available — to GRAY and TXC LIMITED.

53.     Throughout the four-plus-month freeze on the Accounts that was unilaterally imposed by SIMMONS BANK, Plaintiffs suffered damages because the funds in the Accounts cannot be used for their intended purpose:  the purchase of Mining Packages and the funding of the operations of entities related to TEXITcoin.

## COUNT 1
## BREACH OF CONTRACT
### *(GRAY and TXC LIMITED v. SIMMONS BANK)*

54.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

55.     Valid and enforceable contracts existed between Plaintiffs GRAY and TXC LIMITED, on one hand, and Defendant SIMMONS BANK, on the other, in the form of the Terms and Conditions and Funds Availability disclosure that were incorporated in the Plaintiffs' Account Agreements and govern Plaintiffs' bank accounts.

56.     Under the Terms and Conditions and Funds Availability disclosures for the Accounts, SIMMONS BANK was obligated to provide GRAY and TXC LIMITED with access to the funds deposited in their respective Accounts, including the express right of any authorized signer to "withdraw or transfer all or any part of your account's available balance at any time[,]" subject only to legitimate legal holds or valid contractual restrictions.

57.     Plaintiffs GRAY and TXC LIMITED performed all obligations required under the Terms and Conditions incorporated in their respective Accounts Agreements with SIMMONS BANK, including maintaining the account in good standing and complying with all lawful terms and conditions.

58.     SIMMONS BANK respectively breached the Terms and Conditions with GRAY and TXC LIMITED by freezing the Accounts in a coordinated and conclusory fashion, without legal basis, without following either the procedures required by the applicable agreements for the Accounts or applicable law, and by failing to lift the freeze on the Accounts in a reasonable time.

59.     Defendant SIMMONS BANK's breaches included:

14

i. Freezing the Accounts, and maintaining that freeze indefinitely, without any contractual or legal authorization, as SIMMONS BANK has expressly disclaimed that the freeze was based on the CDO, its own internal review of the Accounts' respective activity, or any administrative proceeding or court order, and has failed to identify any pending adverse claim to the funds in the Accounts;

ii. Failing to conduct and conclude its purported "review" within a reasonable timeframe;

iii. Denying Plaintiffs access to deposited funds in the Accounts without legal cause;

iv. Failing, in the alternative, to close the Accounts and tender the funds in the Accounts to Plaintiffs, as the Terms and Conditions expressly requires upon closure; and

v. Breaching SIMMONS BANK's express contractual undertaking to act in good faith and with ordinary care.

60. As a direct and proximate result of SIMMONS BANK's breaches of contract, Plaintiffs have suffered damages including loss of access to funds, financial hardship, inability to meet financial obligations, and consequential damages.

## COUNT 2
### CONVERSION
### *(GRAY and TXC LIMITED v. SIMMONS BANK)*

61. Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

62. Plaintiffs plead this Count in the alternative pursuant to Fed. R. Civ. P. 8(d)(2).

63. Plaintiffs GRAY and TXC LIMITED had a possessory right and ownership interest in the funds deposited in Accounts X-3871 and X-1660, respectively, with SIMMONS BANK.

15

64.     The funds in the Accounts are specific and capable of identification.  Indeed, the funds are respectively held in two discrete, segregated deposit accounts.  Each of the Accounts has a determinate, ascertainable balance reflected in SIMMONS BANK's own books and records.

65.     SIMMONS BANK's continued dominion over the funds in the Accounts is not an exercise of any right conferred by the parties' agreements.  Indeed, SIMMONS BANK has expressly disclaimed that its freeze of the Accounts rests on any contractual review, legal process, court order or administrative proceeding and has failed to identify any pending adverse claim to the funds in the Accounts.  SIMMONS BANK's retention of the funds in the Accounts is accordingly wrongful and independent of its contractual obligations relating to the Accounts.

66.     Defendant SIMMONS BANK wrongfully exercised dominion and control over Plaintiffs' funds in the Accounts by freezing the Accounts, maintaining the freeze on the Accounts for an unreasonably long period of time, and denying Plaintiffs access to the funds in the Accounts without legal justification or recourse.

67.     SIMMONS BANK's continued exercise of dominion and control over Plaintiffs' funds in the Accounts was and remains unauthorized and wrongful.

68.     SIMMONS BANK's actions were inconsistent with and in denial of Plaintiffs' ownership and possessory rights in the funds in the Accounts.

69.     SIMMONS BANK intentionally interfered with Plaintiffs' possessory rights to the funds in the Accounts by refusing to release the funds in the Accounts, despite Plaintiffs' demands and despite the lack of legal basis for underlying freezes.

70.     As a direct and proximate result of SIMMONS BANK's conversion of Plaintiffs' funds in the Accounts, Plaintiffs have suffered damages equal to the value of the funds wrongfully withheld, plus consequential damages.

## COUNT 3
## REPLEVIN
### (Fed. R. Civ. P. 64 and Ark. Code Ann. §§ 18-60-801 et seq.)
### (GRAY and TXC LIMITED v. SIMMONS BANK)

71. Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

72. Plaintiffs GRAY and TXC LIMITED are, and at all relevant times have been, the owners of, and entitled to immediate possession of, respectively, Account X-3871 and Account X-1660 pursuant to the Account Agreements and the Terms and Conditions incorporated therein.

73. Account X-3871 has an estimated fair market value of approximately $1.7 million, and Account X-1660 has an estimated fair market value of $1.4 million. In this Count, Plaintiffs seek recovery of the Accounts themselves rather than merely their monetary value.

74. Defendant SIMMONS BANK currently possesses, controls, and exercises dominion over the Accounts, having frozen the Accounts and deprived Plaintiffs of access thereto without any legal or contractual basis for withholding the same.

75. The Accounts have not been taken for a tax or fine against the Plaintiffs, or under any order or judgment of a court against them, or seized under an execution or attachment against their property.

76. Defendant SIMMONS BANK's possession of the Accounts is wrongful because Plaintiffs have the superior right to immediate possession of the Accounts.

77. Plaintiffs have demanded that SIMMONS BANK return the Accounts, but SIMMONS BANK has failed and refused to do so.

78. Defendant SIMMONS BANK continues to wrongfully detain the Accounts despite Plaintiffs' superior possessory rights.

17

79.    Plaintiffs have no adequate remedy at law because damages alone cannot fully compensate Plaintiffs for the loss of possession and ongoing ability to use the Accounts to meet their financial obligations as they become due.

80.    Plaintiffs' causes of action have accrued within the last three years.

81.    Pursuant to Fed. R. Civ. P. 64 and Ark. Code Ann. §§ 18-60-801 to 822, Plaintiffs are entitled to immediate possession of the Accounts and, if appropriate, an order directing the sheriff or other authorized officer to seize and deliver the Accounts to Plaintiffs pending final judgment upon Plaintiffs' posting of any bond required by law.

82.    If return of the Accounts cannot be had, Plaintiffs are entitled to recover the value of the Accounts, together with damages for its wrongful detention, including any loss of use, consequential damages recoverable under Arkansas law, prejudgment interest where permitted, and costs.

### COUNT 4
### NEGLIGENCE
### *(GRAY and TXC LIMITED v. SIMMONS BANK)*

83.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

84.    Plaintiffs plead Count 4 in the alternative under Fed. R. Civ. P. 8(d)(2).

85.    SIMMONS BANK owed Plaintiffs a duty to exercise ordinary care and to act in good faith in the handling and management of the Accounts and the funds deposited in the Accounts. That duty exists independent of the parties' agreements. Under Ark. Code Ann. § 4-4-103(a), a bank may not disclaim responsibility for its own lack of good faith or failure to exercise ordinary care. The Account Agreement for the Accounts confirms that SIMMONS BANK has a duty "to act in good faith and with ordinary care when required by law."

18

86.   Defendant SIMMONS BANK breached its duty of care to Plaintiff by:

i.   Maintaining the freeze on the Accounts after concluding its purported review of the activity in the Accounts and in the absence of any legal order requiring the freeze or other authorization permitting the freeze;

ii.   Refusing to pay or tender the funds in the Accounts to Plaintiffs without any legal or contractual basis for withholding the same;

iii.   Maintaining the freeze for an unreasonable period without justification; and

iv.   Failing to exercise the ordinary care required by Ark. Code Ann. § 4-4-103(a), the Account Agreements, and the Terms and Conditions incorporated therein.

87.   SIMMONS BANK's conduct fell below the standard of care that a reasonably prudent financial institution would exercise under similar circumstances and as required under the Account Agreements.

88.   As a direct and proximate result of SIMMONS BANK's negligence, Plaintiffs have suffered damages including financial losses, inability to access funds, damage to credit and business relationships, and consequential damages.

## COUNT 5
## UNJUST ENRICHMENT
### (*GRAY and TXC LIMITED v. SIMMONS BANK*)

89.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

90.   Plaintiffs plead Count 5 in the alternative under Fed. R. Civ. P. 8(d)(2). Plaintiffs allege unjust enrichment only to the extent the Court determines that no enforceable contract governs Defendant SIMMONS BANK's conduct or that SIMMONS BANK's actions fall outside the scope of any applicable agreement between the parties.

19

91.    Plaintiffs GRAY and TXC LIMITED deposited substantial sums of money into Accounts X-3871 and X-1660, respectively.  Both Accounts are maintained by SIMMONS BANK.

92.    By accepting Plaintiffs' deposits, SIMMONS BANK received and continues to receive valuable benefits, including possession, custody, use, and control of Plaintiffs' funds, together with the economic benefits attendant to holding those funds.

93.    SIMMONS BANK subsequently froze Plaintiffs' Accounts, denied Plaintiffs access to the deposited funds, and has continued to retain possession and control of those funds.

94.    SIMMONS BANK's freeze was not required by any court order, legal process, or applicable law, and was not otherwise justified under the circumstances.

95.    SIMMONS BANK has refused to restore Plaintiffs' access to the funds deposited in the Accounts despite Plaintiffs' demands and despite SIMMONS BANK's inability or unwillingness to identify a lawful basis or other authorization for continuing to withhold the funds.

96.    As a result, SIMMONS BANK has retained the benefit of Plaintiffs' money while depriving Plaintiffs of the use, possession, and enjoyment of those funds.

97.    SIMMONS BANK has obtained and retained benefits at Plaintiffs' expense, including the continued possession and access to Plaintiffs' deposited funds and the economic value associated with those funds.

98.    Under Arkansas law, SIMMONS BANK's retention of those benefits is unjust because SIMMONS BANK has no equitable right to continue holding Plaintiffs' funds while simultaneously denying Plaintiffs access to them.

99.    Equity and good conscience require SIMMONS BANK to restore to Plaintiffs the value of the benefits unjustly retained, including the return of all wrongfully withheld funds and

any other monetary benefits SIMMONS BANK realized from retaining possession of Plaintiffs' money.

100.    As a direct and proximate result of SIMMONS BANK's unjust enrichment, Plaintiffs have suffered damages, including the loss of the use of their funds, consequential financial harm, and other damages in an amount to be determined at trial.

## COUNT 6
## DECLARATORY JUDGMENT
### 28 U.S.C. §§ 2201, 2202
### (*GRAY and TXC LIMITED v. SIMMONS BANK*)

101.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

102.    An actual, substantial, and justiciable controversy exists between Plaintiffs and SIMMONS BANK concerning SIMMONS BANK's authority under the Account Agreements to maintain an indefinite freeze on the Accounts in the absence of any court order, administrative proceeding, or ongoing internal review of the activity in the Accounts.

103.    Plaintiffs are entitled to a declaration that the Account Agreements, and the Terms and Conditions incorporated therein, do not authorize the freezes; that SIMMONS BANK must either restore Plaintiffs' full access to the Accounts or close the Accounts and tender the funds in the Accounts to Plaintiffs; and that SIMMONS BANK's continued retention of the funds is without contractual or legal justification.

104.    A declaratory judgment will resolve the controversy between the parties and afford Plaintiffs relief from SIMMONS BANK's ongoing withholding of their funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant SIMMONS BANK, and award Plaintiffs GRAY and TXC LIMITED the following relief:

A. Enter judgment declaring that Plaintiffs have the immediate right to possession of the Accounts;

B. Issue a writ of replevin directing that the Accounts be seized from SIMMONS BANK and delivered to Plaintiffs pursuant to Arkansas law;

C. Award Plaintiffs possession of the Accounts;

D. Compensatory damages to GRAY and TXC LIMITED in an amount in excess of $1.7 million and $1.4 million, respectively, to be determined at trial, for all damages proximately caused by SIMMONS BANK's wrongful conduct, including:

   i.   the value of funds wrongfully withheld;

   ii.  financial losses and expenses incurred;

   iii. damage to credit and business relationships; and

   iv.  all other economic and consequential damages.

E. Pre-judgment interest as provided by law;

F. Post-judgment interest as provided by law;

G. Costs of suit;

H. Reasonable attorneys' fees pursuant to Ark. Code Ann. § 16-22-308 and any other applicable law; and

I. Such other and further relief as the Court deems just and proper.

DATED: July 22, 2026

Respectfully submitted,

by: /s/ John Wesley Hall
John Wesley Hall
  Ark. Bar No. 73047
1202 Main Street; Suite 210
Little Rock, Arkansas 72202-5057
Tel.: (501) 371-9131
Fax: (501) 378-0888
E-mail: ForHall@aol.com

/s/ Scott Armstrong
Scott Armstrong (*pro hac vice forthcoming*)
Drew Bradylyons (*pro hac vice forthcoming*)
ARMSTRONG & BRADYLYONS PLLC
4315 50th Street NW, Suite 200
Washington, D.C. 20016
Tel.: (202) 803-7907
Email: Scott@abdclegal.com

*Attorneys for Plaintiffs Robert J. Gray d/b/a*
*Danagger Resources and TXC Limited LLC*

23

# EXHIBIT A

## ACCOUNT AGREEMENT

Simmons Bank
439-TX Tyler 3915 S SW Loop 323
3915 S Sw Loop 323
Tyler, TX 75704-0000

**Account Number:** ▮▮▮1660

**Account Owner(s) Name & Address**
TX LIMITED LLC
5511 State Highway 31 W
Tyler, TX 75709-9731

Agreement Date: __05/14/2025__ By: N CROW
☐ EXISTING Account - This agreement replaces previous agreement(s).
☐ This is a Temporary account agreement.
Account Description: Business Core Checking

---

☒ Checking ☐ Savings ☐ NOW ☐ _____
Initial Deposit $ 5,970.00 Source: Other

### Ownership of Account - CONSUMER Purpose

☐ The types of accounts provided by Texas law have been disclosed on the separate Single-Party or Multiple-Party Account Selection Form Notice (Selection Form Notice), on which the undersigned have initialed to designate the ownership type selected. The undersigned acknowledge(s) receipt of a copy of the completed Selection Form Notice.

☐ _____

### Ownership of Account - BUSINESS Purpose

☐ Sole Proprietorship ☐ Single-Member LLC ☐ Partnership
☐ LLC *(LLC tax classification:* ☐ *C Corp* ☐ *S Corp* ☐ *Partnership)*
☐ C Corporation ☐ S Corporation ☐ *Non-Profit*
☒ Limited Liability Company (LLC)
Business: Bitcoin Investment Holding

**Additional Information:**

**Signature(s).** The undersigned certifies the accuracy of the information he/she has provided and acknowledges receipt of a completed copy of this form. The undersigned authorizes the financial institution to verify credit and employment history and/or have a credit reporting agency prepare a credit report on the undersigned, as individuals. The undersigned also acknowledge the receipt of a copy and agree to the terms of the following agreement(s) and/or disclosure(s):

☒ Terms & Conditions ☒ Truth in Savings ☒ Funds Availability
☐ Electronic Fund Transfers ☐ Privacy ☐ Substitute Checks
☒ Common Features ☐ _____

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

(1): [ _signature_ ]
William Downs Jr
I.D. # ▮▮▮▮▮▮ D.O.B. ▮▮▮▮▮▮

(2): [ _signature_ ]
Timothy Blake
I.D. # ▮▮▮▮▮▮ D.O.B. ▮▮▮▮▮▮

(3): [ X ]
I.D. # _____ D.O.B. _____

(4): [ X ]
I.D. # _____ D.O.B. _____

☐ The person(s) named below are Convenience Signers only (not owners)

[ X ]
I.D. # _____ Other _____

[ X ]
I.D. # _____ Other _____

### Backup Withholding Certifications *(Non-"U.S. Persons" - Use separate Form W-8)*

☒ By signing at right, I, TX LIMITED LLC _____, certify under penalties of perjury that the statements made in this section are true.

☒ TIN: ▮▮▮▮▮▮ The Taxpayer Identification Number (TIN) shown is my correct taxpayer identification number.

☒ **Not Subject to Backup Withholding.** I am NOT subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ **Exempt Recipient.** I am an exempt recipient under the Internal Revenue Service Regulations. Exempt payee code (if any) _____

**FATCA Code.** The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**U.S. Person.** I am a U.S. citizen or other U.S. person (as defined in the instructions).

Signature Card-TX
Bankers Systems™ VMP®
Wolters Kluwer Financial Services ©2016

# EXHIBIT B

## ACCOUNT AGREEMENT

Simmons Bank
439-TX Tyler 3915 S SW Loop 323
3915 S Sw Loop 323
Tyler, TX 75704-0000

**Account Number:** ████3871

**Account Owner(s) Name & Address**
Robert J Gray
DBA Danagger Resources
10550 Rose Bud Ct
McKinney, TX 75072-6542

Agreement Date: __11/19/2025__ By: N CROW
☐ EXISTING Account - This agreement replaces previous agreement(s).
☐ This is a Temporary account agreement.
**Account Description:** Business Pro Checking

☐ Checking ☐ Savings ☐ NOW ☒ Interest Checking
Initial Deposit $ 150,000.00 Source: Other

**Ownership of Account - CONSUMER Purpose**

☐ The types of accounts provided by Texas law have been disclosed on the separate Single-Party or Multiple-Party Account Selection Form Notice (Selection Form Notice), on which the undersigned have initialed to designate the ownership type selected. The undersigned acknowledge(s) receipt of a copy of the completed Selection Form Notice.
☐ _____

**Ownership of Account - BUSINESS Purpose**

☒ Sole Proprietorship ☐ Single-Member LLC ☐ Partnership
☐ LLC (LLC tax classification: ☐ C Corp ☐ S Corp ☐ Partnership)
☐ C Corporation ☐ S Corporation ☐ Non-Profit
☐ _____
**Business:** Consulting Services

**Additional Information:**

**Signature(s).** The undersigned certifies the accuracy of the information he/she has provided and acknowledges receipt of a completed copy of this form. The undersigned authorizes the financial institution to verify credit and employment history and/or have a credit reporting agency prepare a credit report on the undersigned, as individuals. The undersigned also acknowledge the receipt of a copy and agree to the terms of the following agreement(s) and/or disclosure(s):

☒ Terms & Conditions ☒ Truth in Savings ☒ Funds Availability
☐ Electronic Fund Transfers ☐ Privacy ☐ Substitute Checks
☒ Common Features ☐ _____

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

(1): [ X _~signature~_ ]
  Robert J Gray
  I.D. # ████ D.O.B. ████

(2): [ X ]
  I.D. # _____ D.O.B. _____

(3): [ X ]
  I.D. # _____ D.O.B. _____

(4): [ X ]
  I.D. # _____ D.O.B. _____

☐ The person(s) named below are Convenience Signers only (not owners)

[ X ]
  I.D. # _____ Other _____

[ X ]
  I.D. # _____ Other _____

**Backup Withholding Certifications** *(Non-"U.S. Persons" - Use separate Form W-8)*

☒ By signing at right, I, Robert J Gray ,
certify under penalties of perjury that the statements made in this section are true.

☒ **TIN:** ████████ The Taxpayer Identification Number (TIN) shown is my correct taxpayer identification number.

☒ **Not Subject to Backup Withholding.** I am NOT subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ **Exempt Recipient.** I am an exempt recipient under the Internal Revenue Service Regulations. Exempt payee code (if any) _____

**FATCA Code.** The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**U.S. Person.** I am a U.S. citizen or other U.S. person (as defined in the instructions).

Signature Card-TX
Bankers Systems™ VMP®
Wolters Kluwer Financial Services ©2016

MPSC-LAZ-TX 1/15/2016
Page 1 of 1

# EXHIBIT C

## TABLE OF CONTENTS

TERMS AND CONDITIONS OF YOUR ACCOUNT ......................................... 1
Agreement ....................................................................... 1
Liability ....................................................................... 1
Deposits ........................................................................ 2
Withdrawals ..................................................................... 2
Posting Order ................................................................... 3
Business, Organization and Association Accounts ................................. 3
Stop Payments ................................................................... 3
Telephone Transfers ............................................................. 3
Amendments and Termination ...................................................... 3
Notices ......................................................................... 3
Statements ...................................................................... 3
Account Transfer ................................................................ 3
Direct Deposits ................................................................. 3
Temporary Account Agreement ..................................................... 4
Setoff; Security Interest ....................................................... 4
Restrictive Legends or Indorsements ............................................. 4
Facsimile Signatures ............................................................ 4
Check Processing ................................................................ 4
Check Cashing ................................................................... 4
Indorsements .................................................................... 4
Death or Incompetence ........................................................... 4
Fiduciary Accounts .............................................................. 4
Credit Verification ............................................................. 4
Legal Actions Affecting Your Account ............................................ 4
Account Security ................................................................ 4
Telephonic Instructions ......................................................... 5
Monitoring and Recording Telephone Calls
    and Consent to Receive Communications ....................................... 5
Claim of Loss ................................................................... 5
Time Accounts: Additional Disclosures; Early Withdrawal Penalties .............. 5
Address or Name Changes ......................................................... 5
Resolving Account Disputes ...................................................... 5
Waiver of Notices ............................................................... 5
Truncation, Substitute Checks, and Other Check Images .......................... 5
Remotely Created Checks ......................................................... 5
Unlawful Internet Gambling Notice ............................................... 6
Subaccount Organization ......................................................... 6
Funds Transfers ................................................................. 6
Dispute Resolution by Binding Arbitration ....................................... 6
YOUR ABILITY TO WITHDRAW FUNDS .................................................. 8
SPECIFIC ACCOUNT DETAILS ........................................................ 8
Business Core Checking Account .................................................. 8
Business Plus Checking Account .................................................. 9
Business Pro Checking Account ................................................... 9
Non-Profit Checking Account ..................................................... 9
Simply Business 50 Checking Account ............................................ 10
Simply Business 250 Checking Account ........................................... 10
Simply Business 500 Checking Account ........................................... 10
Non-Profit Business Checking Account ........................................... 11
IOLTA Business Checking Account ................................................ 11
Commercial Checking Account .................................................... 11
Public Funds Interest Checking Account ......................................... 11
Public Funds Analyzed Account .................................................. 11
MSB Commercial Checking Account ................................................ 11
Financial Institutions Account ................................................. 12
Financial Institution Plus Account ............................................. 12
Public Funds-Lite Account ...................................................... 12
Treasury Management-Lite Account ............................................... 12
WHL Residual Checking Account .................................................. 12
Simply Savings Business Account ................................................ 12
Money Market Savings Business Account .......................................... 13
Public Funds Money Market Account .............................................. 13
Certificate of Deposit ......................................................... 13
Jumbo Certificate of Deposit ................................................... 13
Common Features ................................................................ 14
Your Account ................................................................... 14

## TERMS AND CONDITIONS OF YOUR ACCOUNT

**AGREEMENT** - This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us and related matters. Please read this carefully and retain it for future reference. If you sign the signature card, otherwise indicate your acceptance of these terms, or open or continue to use the account, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees if they are not included in this document. If you have any questions, please call us.

**This agreement requires that disputes be resolved through individual arbitration rather than jury trials or class action proceedings and limits your remedies in the event of a dispute.** If you do not wish to agree to arbitration, please refer to the section entitled "Dispute Resolution by Binding Arbitration" for instructions on how to reject arbitration.

This agreement is subject to applicable federal laws, the laws of the state of Arkansas and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

(1) establish rules to cover transactions or events which the law does not regulate;

(2) establish rules for certain transactions or events which the law regulates but permits variation by agreement; and

(3) give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document. Nothing in this document is intended to vary our duty to act in good faith and with ordinary care when required by law. Our forbearance from, or delay in, exercising any of our rights, remedies, or privileges under this agreement or applicable law shall not be construed to be a waiver of those rights, remedies, or privileges.

As used in this document the words "we," "our," and "us" mean the financial institution (Simmons Bank), and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. However, this agreement does not intend, and the terms "you" and "your" should not be interpreted, to expand an individual's responsibility for an organization's liability. If this account is owned by a corporation, partnership or other organization, individual liability is determined by the laws generally applicable to that type of organization. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular. Whenever the words, "include," "includes," or "including" are used in this agreement, they shall be deemed followed by the phrase "without limitation" (except to the extent such phrase, or a phrase of substantially similar meaning, is already expressly stated). Whenever the use of our discretion is referenced in this agreement, such discretion shall be deemed to mean our sole and absolute discretion.

**LIABILITY** - You agree (for yourself and the person or entity you represent if you sign as a representative of another) to the terms of this agreement. You agree to pay all fees and charges applicable to the accounts and services we provide to you, including, but not limited to, those described in this agreement and in our Schedule of Fees and Charges. You authorize us to deduct all such fees and charges, without notice to you, directly from your account as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from fees, charges, or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from your account even if sufficient funds are not available at the time. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the fee, charge, or overdraft.

You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account. This includes, but is not limited to, disputes between you and another joint owner; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you. But in the event you bring a dispute against us, you will not be responsible for our costs and attorneys' fees except as provided by applicable law.

Unless we agree in writing otherwise, we have no fiduciary duties to you related to the accounts and services we provide to you. We will not be liable for anything we do when following your instructions. We will not be liable if we do not follow your instructions if we reasonably believe that following your instructions would expose us to potential loss or civil or criminal liability or conflict with customary banking practice.

You must file any lawsuit or arbitration against us within two years after the cause of action arises unless applicable law or an applicable provision of this agreement or any other agreement between you and us provides for a shorter time.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010  EARAIB11

v.2025.1

**DEPOSITS -**

**Generally -** We will give only provisional credit until collection and settlement are final for any items, other than cash, we accept for deposit (including items drawn "on us"). Before settlement of any item becomes final, we act only as your agent, regardless of the form of indorsement or lack of indorsement on the item and even though we provide you provisional credit for the item. We may reverse any provisional credit for items that are lost, stolen, or returned, even if the reversal causes a negative balance in your account. Unless prohibited by law, we also reserve the right to charge back to your account the amount of any item deposited to your account or cashed for you which was initially paid by the payor bank and which is later returned to us due to an allegedly forged, unauthorized or missing indorsement, claim of alteration, encoding error or other problem which in our judgment justifies reversal of credit (for example, a counterfeit cashier's check). You authorize us to attempt to collect previously returned items without giving you notice, and in attempting to collect we may permit the payor bank to hold an item beyond the midnight deadline. Unless specifically stated elsewhere in this agreement or in a separate agreement between you and us, actual credit for deposits of, or payable in, foreign currency will be in U.S. dollars based on the exchange rate in effect at the Federal Reserve Banks at the time of final collection. We are not responsible for transactions by mail or outside depository until we actually record them. If you deliver a deposit to us and you will not be present when the deposit is counted, you must provide us an itemized list of the deposit (deposit slip). To process the deposit, we will verify and record the deposit, and credit the deposit to the account. If there are any discrepancies between the amounts shown on the itemized list of the deposit and the amount we determine to be the actual deposit, we will notify you of the discrepancy. You will be entitled to credit only for the actual deposit as determined by us, regardless of what is stated on the itemized deposit slip. We will treat and record all transactions received after our "daily cutoff time" on a business day we are open, or received on a day we are not open for business, as if initiated on the next business day that we are open. If we accept a third-party check or draft for deposit, we may require any third-party indorsers to verify or guarantee their indorsements, or indorse in our presence.

**Collection as Agent -** We reserve the right, at our discretion, to accept an item for collection instead of deposit and to impose a fee for attempting collection of the item. If we accept an item for collection, we will not give you credit for the item until we receive actual and final payment for the item. We are obligated only to exercise ordinary care in handling and collecting items we accept for collection; you assume all other risk. We are not liable for any failure to collect or settle items accepted for collection. Items accepted for collection that are payable in foreign currency will be credited in U.S. dollars. We are not responsible for any exchange rate that any paying bank or Federal Reserve Bank uses to convert such funds. Exchange rates can fluctuate significantly in a short period of time. You bear all exchange rate risk related to items accepted for collection that are payable in foreign currency.

**WITHDRAWALS -**

**Generally -** Unless clearly indicated otherwise on your account records, any of you, acting alone, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of your account's available balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us.

**Available balance -** The term "available balance" means the amount of money in your account that you can use, withdraw, or transfer. The available balance may increase or decrease throughout the day based on the account activity. Any holds associated with your account reduce the available balance.

Some activities may not cause your available balance to increase or decrease right away. For example, your available balance may not reflect (1) outstanding checks and authorized withdrawals that we have not received, (2) debit card transactions that you authorized but that have not been submitted by the merchant, (3) the final amount of a debit card purchase that has been authorized (like a car rental or hotel bill), or (4) amounts from deposits that are not yet available (see the disclosure titled "Your Ability to Withdraw Funds" for more information).

You may obtain the available balance (as of the time of your inquiry) via Simmons Online Banking, Mobile Banking, at an automated teller machine ("ATM"), at a Simmons Bank branch, or by calling us at (866) 246-2400.

**Postdated checks -** A postdated check is one which bears a date later than the date on which the check is written. We may properly pay and charge your account for a postdated check even though payment was made before the date of the check, unless we have received written notice of the postdating in time to have a reasonable opportunity to act. Because we process checks mechanically, your notice will not be effective and we will not be liable for failing to honor your notice unless it precisely identifies the number, date, amount and payee of the item.

**Checks and withdrawal rules -** If you do not purchase your check blanks from us, you must be certain that we approve the check blanks you purchase. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us or by any method we do not specifically permit. We may refuse any withdrawal or transfer request which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. In addition, we may place limitations on the account until your identity is verified. Even if we honor a nonconforming request, we are not required to do so later. If you violate the stated transaction limitations (if any), in our discretion we

may close your account or reclassify it as a transaction account. If we reclassify your account, your account will be subject to the fees and earnings rules of the new account classification.

If we are presented with an item drawn against your account that would be a "substitute check," as defined by law, but for an error or defect in the item introduced in the substitute check creation process, you agree that we may pay such item.

See the funds availability policy disclosure for information about when you can withdraw funds you deposit. For those accounts to which our funds availability policy disclosure does not apply, you can ask us when you make a deposit when those funds will be available for withdrawal. An item may be returned after the funds from the deposit of that item are made available for withdrawal. In that case, we will reverse the credit of the item. We may determine the available balance in your account for the purpose of deciding whether to return an item for insufficient funds at any time between the time we receive the item and when we return the item or send a notice in lieu of return. We need only make one determination, but if we choose to make a subsequent determination, the available balance at the subsequent time will determine whether there are insufficient funds.

**Cash withdrawals -** We recommend you take care when making large cash withdrawals because carrying large amounts of cash may pose a danger to your personal safety. As an alternative to making a large cash withdrawal, you may want to consider a cashier's check or similar instrument. You assume full responsibility of any loss in the event the cash you withdraw is lost, stolen, or destroyed. You agree to hold us harmless from any loss you incur as a result of your decision to withdraw funds in the form of cash.

**Overdrafts and Returned Items**

**Generally -** When the dollar amount of an item presented to us for payment exceeds the available balance of your account, at our discretion and without notice to you, we may pay or return the item. If we pay the item, the payment will result in a negative available balance on your account and create an overdraft. We may decide to pay an item even if the available balance of your account is already negative. Each such payment will constitute an additional overdraft. An item may include a check, ACH debit, ATM debit, debit card transaction, bank fee or other item or debit.

The fact that, in the past, we may have paid items that created overdrafts or returned items that would have overdrawn your account does not obligate us to do the same in the future. You CANNOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. We can change our practice of paying overdrafts on your account without notice to you.

**Fees -** Except as stated below, you agree that we may charge fees if we pay or return an item that exceeds the available balance of your account. For the purpose of charging these fees, our determination of whether your available balance is sufficient to pay an item is made when the item is processed and posted to your account. For more details on our posting process, see the section below under the heading "Posting Order." All fees for overdrafts and returned items will reduce your available balance and, if your available balance is negative, will reduce your available overdraft limit (if any).

- ♦ **If We Pay an Item -** If we pay an item that exceeds the available balance of your account when the item is posted (including a second or subsequent request for payment), we may charge a Paid Item/Overdraft Fee. However, the following exceptions apply:
  - We generally will not charge a Paid Item/Overdraft Fee for an item that results in an available balance that is negative by $5.00 or less.
  - For consumer accounts only, we will not charge Paid Item/Overdraft Fees for overdrafts caused by ATM withdrawals or point-of-sale (non-recurring) debit card transactions if you have not opted into our Additional Overdraft Privilege program, which is optional.
  - We will not charge a Paid Item/Overdraft Fee for ATM or point-of-sale (non-recurring) debit card transactions if the available balance at the time of the transaction was sufficient to cover the authorized amount.
- ♦ **If We Return an Item -** If we return an item that would have resulted in an overdraft on your account had the item been paid during our posting process (including a second or subsequent request for payment), we may charge a Return Item/Insufficient Funds Fee. You may also be charged a fee by the party that presented the item for payment. We may charge Return Item/Insufficient Funds Fees for returned items even if you have opted out of our Standard Overdraft Privilege.

**Additional Information -** More information about overdraft services and fees for overdrafts and returned items can be found in our Overdraft Privilege Disclosure and our Schedule of Fees and Charges. Additional copies of each of these documents are available from us upon request. You can also ask us if we have other account services that might be available to you where we agree to pay overdrafts under certain circumstances, such as an overdraft protection line-of-credit or a plan to sweep funds from another account you have with us.

**Repaying Overdrafts -** You agree to immediately repay us the amount of any overdraft on your account. If you do not do so, or if you have too many overdrafts, we may close your account. Also, we may report to credit reporting agencies your overdrafts and your failure to repay them, and we may commence collection activities (in addition to any other legal remedy we may have).

**Multiple Requests for Payment -** If we return an item, the party that presented the item for payment might have the right to make a second or subsequent request for payment. If we receive such a second or subsequent request for payment, we will treat the request as an independent item different from the item(s) previously presented. This means that if a second or subsequent

request for payment is made, and at that time it again exceeds the available balance on your account, we may either pay or return the item and we may charge a Paid Item/Overdraft Fee or an additional Return Item/Insufficient Funds Fee.

**Multiple signatures, electronic check conversion, and similar transactions** - An electronic check conversion transaction is a transaction where a check or similar item is converted into an electronic fund transfer as defined in the Electronic Fund Transfers regulation. In these types of transactions the check or similar item is either removed from circulation (truncated) or given back to you. As a result, we have no opportunity to review the signatures or otherwise examine the original check or item. You agree that, as to these or any items as to which we have no opportunity to examine the signatures, you waive any requirement of multiple signatures.

**Notice of withdrawal** - We reserve the right to require not less than 7 days' notice in writing before each withdrawal from an interest-bearing account other than a time deposit or demand deposit, or from any other savings account as defined by Regulation D. (The law requires us to reserve this right, but it is not our general policy to use it.) Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**POSTING ORDER**
Posting order is the order in which we post transactions to your account. When we transition from one business day to the next business day, we post transactions to your account during our nightly processing for each business day. In connection with the posting process, we generally group transactions into two main categories: debits and credits. Within the debit and credit categories, we further generally subcategorize and post transactions by category/subcategory.

- Deposits and other categories of credits are generally posted before debits.
- Withdrawals and other categories of debits are generally posted after credits. Among the debit categories, categories of electronic transactions, such as ATM withdrawals, PIN-based debit card transactions, and signature-based debit card transactions, are generally posted before categories of paper items, such as checks. Within each category of electronic debit transactions, we generally post transactions based on the dollar amount, from lowest to highest. Within each category of checks and other paper items, we generally post in check/item number order.
- We generally post Paid Item/Overdraft Fees and Return Item/Insufficient Funds Fees immediately after we post or return the debit item that exceeded the available balance.
- We generally post service charges last.

A transaction may affect the available balance of your account prior to the time it is posted to your account. For example, when a debit card transaction is authorized, the authorization may reduce the available balance on your account in an amount equal to the authorization.

**BUSINESS, ORGANIZATION AND ASSOCIATION ACCOUNTS** - Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy.

You represent that you have the authority to open and conduct business on this account on behalf of the entity. We may require the governing body of the entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the entity.

**STOP PAYMENTS** - The rules in this section cover stopping payment of items such as checks and drafts. Rules for stopping payment of other types of transfers of funds, such as consumer electronic fund transfers, may be established by law or our policy. If we have not disclosed these rules to you elsewhere, you may ask us about those rules.

We may accept an order to stop payment on any item from any one of you. You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. Because stop-payment orders are handled by computers, to be effective, your stop-payment order must precisely identify the number, date, and amount of the item, and the payee. You may stop payment on any item drawn on your account whether you sign the item or not. In general, your stop-payment order - whether we receive it orally, in writing, or by another type of record - will be effective for six months. We will send you confirmation - either in writing or by another type of record - of your stop-payment order which will include the date on which your stop-payment order will lapse. (Generally, a "record" is information that is stored in such a way that it can be retrieved and can be heard or read and understood). We may rely on the information in that confirmation unless you notify us immediately of any errors. We are not obligated to notify you when a stop-payment order expires. However, you can prevent your stop-payment order from expiring by renewing your stop-payment order before the end of the six-month period.

If you stop payment on an item and we incur any damages or expenses because of the stop payment, you agree to indemnify us for those damages or expenses, including attorneys' fees. You assign to us all rights against the payee or any other holder of the item. You agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the item may be entitled to enforce payment against you despite the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**TELEPHONE TRANSFERS** - A telephone transfer of funds from this account to another account with us, if otherwise arranged for or permitted, may be made by the same persons and under the same conditions generally applicable to withdrawals made in writing. Limitations on the number of telephonic transfers from a savings account, if any, are described elsewhere.

**AMENDMENTS AND TERMINATION** - We may change this agreement at any time, including by adding new terms or by deleting or amending then-existing terms. Rules governing changes in interest rates are provided separately in the Specific Account Details or in another document. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may close this account at any time without prior notice to you. If we close your account, we will provide reasonable notice to you and tender the funds in the account personally or by mail. Items presented for payment after the account is closed may be dishonored, and we have no liability for such dishonor. When you are closing your account, you are responsible for leaving enough money in the account to cover any outstanding items to be paid from the account. Reasonable notice depends on the circumstances, and in some cases such as when we cannot verify your identity or we suspect fraud, it might be reasonable for us to give you notice after the change or account closure becomes effective. For instance, if we suspect fraudulent activity with respect to your account, we might immediately freeze or close your account and then give you notice. If we have notified you of a change in any term of your account (including, for the avoidance of doubt, a change in this agreement) and you continue to have your account after the effective date of the change, you have agreed to the new term(s).

**NOTICES** - Any written notice you give us is effective when we actually receive it, and it must be given to us according to the specific delivery instructions provided elsewhere, if any. We must receive it in time to have a reasonable opportunity to act on it. If the notice is regarding a check or other item, you must give us sufficient information to be able to identify the check or item, including the precise check or item number, amount, date and payee. Written notice we give you is effective when it is deposited in the United States Mail with proper postage and addressed to your mailing address we have on file, or, if you have consented to receive notices from us electronically, when it is first made available to you electronically. Notice to any of you is notice to all of you.

**STATEMENTS - Your duty to report unauthorized signatures, alterations and forgeries** - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us pursuant to this section will depend on the circumstances, but will not, except as provided in the next paragraph, exceed a total of 30 days from when the statement is first sent or made available to you. If you fail to report any unauthorized signatures, alterations or forgeries in your account within 30 days of when we first send or make the statement available to you, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours, including, but not limited to, any amounts lost as a result of subsequent unauthorized signatures, alterations or forgeries on your account by the same wrongdoer if the payment was made before we received notice from you.

You further agree that, if we did not use ordinary care, the time that you have to examine your statements and report to us pursuant to this section will be extended to 60 days. If you fail to report any unauthorized signatures, alterations or forgeries in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. The limitation in this paragraph is in addition to (and not in limitation of) that contained in the first and second paragraphs of this section.

**Your duty to report other errors or problems** - In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error or problem - such as an encoding error, an unexpected deposit amount, or an improper fee or charge. In addition, if you receive or we make available either your items or images of your items, you must examine them for any unauthorized or missing indorsements or any other problems. You agree that the time you have to examine your statement and items and report to us will depend on the circumstances. However, this time period shall not exceed 60 days. Failure to examine your statement and items and report any errors or problems to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors or problems related to items or other matters identified in that statement and as between you and us the loss will be entirely yours.

**Duty to notify if statement not received** - You agree to immediately notify us if you do not receive your statement by the date you normally expect to receive it. Not receiving your statement in a timely manner is a sign that there may be an issue with your account, such as possible fraud or identity theft.

**ACCOUNT TRANSFER** - This account may not be transferred or assigned without our prior written consent.

**DIRECT DEPOSITS** - If we are required for any reason to reimburse the federal government for all or any portion of a benefit payment that was directly deposited into your account, you authorize us to deduct the amount of our liability to the federal government from the account or from any other account

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**TEMPORARY ACCOUNT AGREEMENT** - If the account documentation indicates that this is a temporary account agreement, each person who signs to open the account or has authority to make withdrawals (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**SETOFF; SECURITY INTEREST** - You grant us a right of setoff to, and a security interest in, your account to ensure you pay us all amounts you owe us under this agreement or other debts you owe us (now or in the future). By opening and maintaining your account with us, you consent to our asserting our security interest in your account, to the extent any applicable laws require your consent. Our rights under this security interest are in addition to, and not in limitation of, any other rights under any other security interest you may have granted to us under a separate agreement.

We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt any of you owe us now or in the future. If this account is owned by one or more of you as individuals, we may set off any funds in the account against (i) any due and payable debt owed to us by any account owner or (ii) any due and payable debt a partnership owes us now or in the future, to the extent of your liability as a partner for the partnership debt. If your debt arises from a promissory note, then the amount of the due and payable debt will be the full amount we have demanded, as entitled under the terms of the note, and this amount may include any portion of the balance for which we have properly accelerated the due date.

This right of setoff does not apply to this account if prohibited by law. For example, the right of setoff does not apply to this account if: (a) it is an Individual Retirement Account or similar tax-deferred account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or (c) the debtor's right of withdrawal only arises in a representative capacity, or (d) setoff is prohibited by the Military Lending Act or its implementing regulations. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our security interest or right of setoff. You may not grant a security interest in your account to anyone other than us without our prior written consent.

**RESTRICTIVE LEGENDS OR INDORSEMENTS** - The automated processing of the large volume of checks we receive prevents us from inspecting or looking for restrictive legends, restrictive indorsements or other special instructions on every check. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00." The payee's signature accompanied by the words "for deposit only" is an example of a restrictive indorsement. For this reason, we are not required to honor any restrictive legend or indorsement or other special instruction placed on checks you write unless we have agreed in writing to the restriction or instruction. Unless we have agreed in writing, we are not responsible for any losses, claims, damages, or expenses that result from your placement of these restrictions or instructions on your checks.

**FACSIMILE SIGNATURES** - Unless you make advance arrangements with us, we have no obligation to honor facsimile signatures on your checks or other orders. If we do agree to honor items containing facsimile signatures, you authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us. You give us this authority regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose. You must notify us at once if you suspect that your facsimile signature is being or has been misused.

**CHECK PROCESSING** - We process items mechanically by relying solely on the information encoded in magnetic ink along the bottom of the items. This means that we do not individually examine all of your items to determine if the item is properly completed, signed and indorsed or to determine if it contains any information other than what is encoded in magnetic ink. You agree that we have exercised ordinary care if our automated processing is consistent with general banking practice, even though we do not inspect each item. Because we do not inspect each item, if you write a check to multiple payees, we can properly pay the check regardless of the number of indorsements unless you notify us in writing that the check requires multiple indorsements. We must receive the notice in time for us to have a reasonable opportunity to act on it, and you must tell us the precise date of the check, amount, check number and payee. We are not responsible for any unauthorized signature or alteration that would not be identified by a reasonable inspection of the item. Using an automated process helps us keep costs down for you and all account holders.

**CHECK CASHING** - We may charge a fee for anyone that does not have an account with us who is cashing a check, draft or other instrument written on your account. We may also require reasonable identification to cash such a check, draft or other instrument. We can decide what identification is reasonable under the circumstances and such identification may be documentary or physical and may include collecting a thumbprint or fingerprint.

**INDORSEMENTS** - We may accept for deposit any item payable to you or your order, even if they are not indorsed by you. We may give cash back to any one of you. We may supply any missing indorsement(s) for any item we accept for deposit or collection, and you warrant that all indorsements are genuine.

To ensure that your check or share draft is processed without delay, you must indorse it (sign it on the back) in a specific area. Your entire indorsement (whether a signature or a stamp) along with any other indorsement information

(e.g. additional indorsements, ID information, driver's license number, etc.) must fall within 1 1/2" of the "trailing edge" of a check. Indorsements must be made in blue or black ink, so that they are readable by automated check processing equipment.

As you look at the front of a check, the "trailing edge" is the left edge. When you flip the check over, be sure to keep all indorsement information within 1 1/2" of that edge.



It is important that you confine the indorsement information to this area since the remaining blank space will be used by others in the processing of the check to place additional needed indorsements and information. You agree that you will indemnify, defend, and hold us harmless for any loss, liability, damage or expense that occurs because your indorsement, another indorsement or information you have printed on the back of the check obscures our indorsement.

These indorsement guidelines apply to both personal and business checks.

**DEATH OR INCOMPETENCE** - You agree to notify us promptly if any person with a right to withdraw funds from your account(s) dies or is adjudicated (determined by the appropriate official) incompetent. We may continue to honor your checks, items, and instructions until: (a) we know of your death or adjudication of incompetence, and (b) we have had a reasonable opportunity to act on that knowledge. You agree that we may pay or certify checks drawn on or before the date of death or adjudication of incompetence for up to ten (10) days after your death or adjudication of incompetence unless ordered to stop payment by someone claiming an interest in the account.

**FIDUCIARY ACCOUNTS** - Accounts may be opened by a person acting in a fiduciary capacity. A fiduciary is someone who is appointed to act on behalf of and for the benefit of another. We are not responsible for the actions of a fiduciary, including the misuse of funds. This account may be opened and maintained by a person or persons named as a trustee under a written trust agreement, or as executors, administrators, or conservators under court orders. You understand that by merely opening such an account, we are not acting in the capacity of a trustee in connection with the trust nor do we undertake any obligation to monitor or enforce the terms of the trust or letters.

**CREDIT VERIFICATION** - You agree that we may verify credit and employment history by any necessary means, including preparation of a credit report by a credit reporting agency.

**LEGAL ACTIONS AFFECTING YOUR ACCOUNT** - If we are served with a subpoena, restraining order, writ of attachment or execution, levy, garnishment, search warrant, or similar order relating to your account (termed "legal action" in this section), we may comply with that legal action. In our discretion, we may freeze or restrict the assets in the account and not allow any payments out of the account until a final court determination regarding the legal action. We may do these things even if the legal action involves less than all of you. We will not have any liability to you if there are insufficient funds to pay your items because we have withdrawn funds from your account or in any way restricted access to your funds because of the legal action. Except where limited by applicable law, any fees or expenses we incur in responding to any legal action (including, without limitation, attorneys' fees and our internal expenses), except for an action you commence against us, may be setoff or charged against your account. (If you bring an action against us, you will not be responsible for our costs and attorneys' fees except as provided by applicable law.) The list of fees applicable to your account(s) provided elsewhere may specify additional fees that we may charge for certain legal actions.

**ACCOUNT SECURITY -**
**Duty to protect account information and methods of access -** It is your responsibility to protect the account numbers and electronic access devices (e.g., an ATM card) we provide you for your account(s). Do not discuss, compare, or share information about your account number(s) with anyone unless you are willing to give them full use of your money. An account number can be used by thieves to issue an electronic debit or to encode your number on a false demand draft which looks like and functions like an authorized check. If you furnish your access device and grant actual authority to make transfers to another person (a family member or coworker, for example) who then exceeds that authority, you are liable for the transfers unless we have been notified that transfers by that person are no longer authorized.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

v.2025.1

Your account number can also be used to electronically remove money from your account, and payment can be made from your account even though you did not contact us directly and order the payment.

You must also take precaution in safeguarding your blank checks. Notify us at once if you believe your checks have been lost or stolen. As between you and us, if you are negligent in safeguarding your checks, you must bear the loss entirely yourself or share the loss with us (we may have to share some of the loss if we failed to use ordinary care and if we substantially contributed to the loss).

**Warning regarding scams** - You should be on the lookout for thieves and scammers who might try to impersonate us, our employees, or people known to you. Do not share your account information with someone you do not know, and be wary of anyone requesting money from you in a manner that creates false urgency. Common scams include phishing (attempts to obtain sensitive information such as account details by posing as a reputable company via email, text, or phone), fake emergency, IRS Impostors (fake IRS tax notices or individuals impersonating as IRS agents claiming you owe taxes), and customer or vendor impersonation (individuals attempt to provide fraudulent orders, invoices, or payment instructions). For additional information regarding recent and common scams, please visit the Federal Trade Commission web site at https://www.consumer.ftc.gov/features/scam-alerts. Notify us at once if you believe you are the victim of a scam and have been induced to withdraw or transfer funds from your account.

**Positive pay and other fraud prevention services** - Except for consumer electronic fund transfers subject to Regulation E, you agree that if we offer you services appropriate for your account to help identify and limit fraud or other unauthorized transactions against your account, and you reject those services, you will be responsible for any fraudulent or unauthorized transactions which could have been prevented by the services we offered. You will not be responsible for such transactions if we acted in bad faith or to the extent our negligence contributed to the loss. Such services include positive pay or commercially reasonable security procedures. If we offered you a commercially reasonable security procedure which you reject, you agree that you are responsible for any payment order, whether authorized or not, that we accept in compliance with an alternative security procedure that you have selected.

**TELEPHONIC INSTRUCTIONS** - Unless required by law or we have agreed otherwise in writing, we are not required to act upon instructions you give us via facsimile transmission or leave by voice mail or on a telephone answering machine.

**MONITORING AND RECORDING TELEPHONE CALLS AND CONSENT TO RECEIVE COMMUNICATIONS** - Subject to federal and state law, we may monitor or record telephone calls for security reasons, to maintain a record and to ensure that you receive courteous and efficient service. You consent in advance to any such recording.

To provide you with the best possible service in our ongoing business relationship for your account we may need to contact you about your account from time to time by telephone, text messaging or email. However, we must first obtain your consent to contact you about your account because we must comply with the consumer protection provisions in the federal Telephone Consumer Protection Act of 1991 (TCPA), CAN-SPAM Act and their related federal regulations and orders issued by the Federal Communications Commission (FCC).

◆ Your consent is limited to your account, and as authorized by applicable law and regulations.

◆ Your consent does not authorize us to contact you for telemarketing purposes (unless you otherwise agreed elsewhere).

With the above understandings, you authorize us to contact you regarding your account throughout its existence using any telephone numbers or email addresses that you have previously provided to us or that you may subsequently provide to us.

This consent is regardless of whether the number we use to contact you is assigned to a landline, a paging service, a cellular wireless service, a specialized mobile radio service, other radio common carrier service or any other service for which you may be charged for the call. You further authorize us, any third-party collection service collecting a debt arising from your account, or any other third-party service provider to contact you through the use of voice, voice mail and text messaging, including the use of pre-recorded or artificial voice messages and an automated dialing device.

If necessary, you may change or remove any of the telephone numbers or email addresses at any time using any reasonable means to notify us.

**CLAIM OF LOSS** - The following rules do not apply to a transaction or claim related to a consumer electronic fund transfer governed by Regulation E. The error resolution procedures for consumer electronic fund transfers can be found in our initial Regulation E disclosure titled, "Electronic Fund Transfers." For other transactions or claims, if you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim of loss. Unless we have acted in bad faith, we will not be liable for special or consequential damages, including loss of profits or opportunity, or for attorneys' fees incurred by you.

You agree that you will not waive any rights you have to recover your loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.

**TIME ACCOUNTS: ADDITIONAL DISCLOSURES; EARLY WITHDRAWAL PENALTIES (and involuntary withdrawals)** - Any certificate of deposit terms and disclosures provided by us to you separately are intended to supplement the terms of this agreement. In the event of a conflict between the certificate of deposit terms and disclosures and the terms of the Specific Account Details (both of which were provided to you with this agreement), the terms of the certificate of deposit terms and disclosures shall control. In the event of a conflict between the certificate of deposit terms and disclosures and any other provision of this agreement, the terms of this agreement shall control.

We may impose early withdrawal penalties on a withdrawal from a time account even if you don't initiate the withdrawal. For instance, the early withdrawal penalty may be imposed if the withdrawal is caused by our setoff against funds in the account or as a result of an attachment or other legal process. We may close your account and impose the early withdrawal penalty on the entire account balance in the event of a partial early withdrawal. See your notice of penalty for early withdrawals for additional information.

**ADDRESS OR NAME CHANGES** - You are responsible for notifying us of any change in your address or your name. Unless we agree otherwise, change of address or name must be made in writing by at least one of the account holders. Informing us of your address or name change on a check reorder form is not sufficient. If we communicate by mail, we will generally attempt to communicate with you by use of the most recent address you have provided to us. If we receive returned mail, we may impose a service fee.

**RESOLVING ACCOUNT DISPUTES** - If we become aware of a dispute or claim related to your account, we may, in our sole discretion, freeze your account, place a hold on your account (refuse payment or withdrawal of the funds), or take any other actions described in this section. A dispute or claim includes, but is not limited to, (1) others claiming an interest in your account; (2) a claim arising by operation of law; (3) a dispute between you and another joint owner, you and an authorized signer or similar party; (4) a third party claiming an interest in your account; or (5) any other claim adverse to your own interest. A freeze or hold placed on your account may be for any period of time we believe reasonably necessary to allow a legal proceeding to determine the merits of the claim or until we receive evidence satisfactory to us that the dispute has been resolved. We may ignore instructions (such as an instruction by one account holder or authorized signer not to honor items or other withdrawal orders by another account holder or authorized signer) for the account unless all account holders or authorized signers agree to the instruction. We may require that all account holders or authorized signers sign any instruction, check, item, or other withdrawal order even though the signature card for your account allows for one signature. We may close your account or take other action related to your account that we determine to be reasonable under the circumstances even if the action is not listed here. We may seek instructions from a court of competent jurisdiction, at your expense (to the extent allowed by applicable law), regarding the ownership or control of the account. We may deposit the funds in the account with the clerk of a court in connection with an interpleader action, and, to the extent allowed by applicable law, may recover our costs, including attorney's fees, out of the account. We will not be liable for any items that are dishonored as a consequence of placing a freeze or hold on funds in your account or taking other actions described in this section.

**WAIVER OF NOTICES** - To the extent permitted by law, you waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against your account. For example, if you deposit a check and it is returned unpaid or we receive a notice of nonpayment, we do not have to notify you unless required by federal Regulation CC or other law.

**TRUNCATION, SUBSTITUTE CHECKS, AND OTHER CHECK IMAGES** - If you truncate an original check and create a substitute check, or other paper or electronic image of the original check, you warrant that no one will be asked to make payment on the original check, a substitute check or any other electronic or paper image, if the payment obligation relating to the original check has already been paid. You also warrant that any substitute check you create conforms to the legal requirements and generally accepted specifications for substitute checks. You agree to retain the original check in conformance with our internal policy for retaining original checks. You agree to indemnify us for any loss we may incur as a result of any truncated check transaction you initiate. We can refuse to accept substitute checks that have not previously been warranted by a bank or other financial institution in conformance with the Check 21 Act. Unless specifically stated in a separate agreement between you and us, we do not have to accept any other electronic or paper image of an original check.

**REMOTELY CREATED CHECKS** - Like any standard check or draft, a remotely created check (sometimes called a telecheck, preauthorized draft or demand draft) is a check or draft that can be used to withdraw money from an account. Unlike a typical check or draft, however, a remotely created check is not issued by the paying bank and does not contain the signature of the account owner (or a signature purported to be the signature of the account owner). In place of a signature, the check usually has a statement that the owner authorized the check or has the owner's name typed or printed on the signature line.

You warrant and agree to the following for every remotely created check we receive from you for deposit or collection: (1) you have received express and verifiable authorization to create the check in the amount and to the payee that appears on the check; (2) you will maintain proof of the authorization for at least 2 years from the date of the authorization, and supply us the proof if we ask; and (3) if a check is returned you owe us the amount of the check, regardless of when the check is returned. We may take funds from your account to pay the amount you owe us, and if there are insufficient funds in your account, you still owe us the remaining balance.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

**UNLAWFUL INTERNET GAMBLING NOTICE** - Restricted transactions as defined in Federal Reserve Regulation GG are prohibited from being processed through this account or relationship. Restricted transactions generally include, but are not limited to, those in which credit, electronic fund transfers, checks, or drafts are knowingly accepted by gambling businesses in connection with the participation by others in unlawful Internet gambling.

**SUBACCOUNT ORGANIZATION** - This section applies to all transaction accounts, such as checking accounts, and does not apply to savings accounts, time deposits or money market accounts. For purposes of this section, Health Savings Accounts are considered transaction accounts. We have organized your account in a nontraditional way. Your account consists of two subaccounts. One of these accounts is a transaction subaccount (e.g., a checking subaccount). You will transact business on this subaccount. The other is a nontransaction subaccount (e.g., a savings account). You cannot directly access the nontransaction subaccount, but you agree that we may automatically, and without a specific request from you, initiate individual transfers of funds between subaccounts from time to time at no cost to you. This account organization will not change the amount of federal deposit insurance available to you, your available balance, the information on your periodic statements, or the interest calculation, if this is an interest-bearing account. You will not see any difference between the way your account operates and the way a traditionally organized account operates, but this organization makes us more efficient.

**FUNDS TRANSFERS** - The terms used in this section have the meaning given to them in Article 4A of the Uniform Commercial Code - Funds Transfers (UCC 4A). This section will generally not apply to you if you are a consumer. However, even if you are a consumer, this section will apply to that part of any funds transfer that is conducted by Fedwire. This section is subject to UCC 4A as adopted in the state of Arkansas. This agreement is also subject to all clearing house association rules, rules of the Board of Governors of the Federal Reserve System and their operating circulars. If any part of this agreement is determined to be unenforceable, the rest of the agreement remains effective. This agreement controls funds transfers unless supplemented or amended in a separate written agreement signed by us. This agreement does not apply to a funds transfer if any part of the transfer is governed by the Electronic Fund Transfer Act of 1978 (EFTA), except this agreement does apply to a funds transfer that is a remittance transfer as defined in EFTA unless the remittance transfer is an electronic fund transfer as defined in EFTA.

**Funds transfer** - A funds transfer is the transaction or series of transactions that begin with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. A funds transfer is completed by the acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's order. You may give us a payment order orally, electronically, or in writing, but your order cannot state any condition to payment to the beneficiary other than the time of payment. Credit entries may be made by ACH.

**Authorized account** - An authorized account is a deposit account you have with us that you have designated as a source of payment of payment orders you issue to us. If you have not designated an authorized account, any account you have with us is an authorized account to the extent that payment of the payment order is not inconsistent with the use of the account.

**Acceptance of your payment order** - We are not obligated to accept any payment order that you give us, although we normally will accept your payment order if you have a withdrawable credit in an authorized account sufficient to cover the order. If we do not execute your payment order, but give you notice of our rejection of your payment order after the execution date or give you no notice, we are not liable to pay you as restitution any interest on a withdrawable credit in a non-interest-bearing account.

**Cutoff time** - If we do not receive your payment order or communication canceling or amending a payment order before our cutoff time on a funds transfer day for that type of order or communication, the order or communication will be deemed to be received at the opening of our next funds transfer business day.

**Payment of your order** - If we accept a payment order you give us, we may receive payment by automatically deducting from any authorized account the amount of the payment order plus the amount of any expenses and charges for our services in execution of your payment order. We are entitled to payment on the payment or execution date. Unless your payment order specifies otherwise, the payment or execution date is the funds transfer date we receive the payment order. The funds transfer is completed upon acceptance by the beneficiary's bank. Your obligation to pay your payment order is excused if the funds transfer is not completed, but you are still responsible to pay us any expenses and charges for our services. However, if you told us to route the funds transfer through an intermediate bank, and we are unable to obtain a refund because the intermediate bank that you designated has suspended payments, then you are still obligated to pay us for the payment order. You will not be entitled to interest on any refund you receive because the beneficiary's bank does not accept the payment order.

**Security procedure** - As described more fully in a separate writing, the authenticity of a payment order or communication canceling or amending a payment order issued in your name as sender may be verified by a security procedure. You affirm that you have no circumstances which are relevant to the determination of a commercially reasonable security procedure unless those circumstances are expressly contained in a separate writing signed by us. You may choose from one or more security procedures that we have developed, or you may develop your own security procedure if it is acceptable to us. If you refuse a commercially reasonable security procedure that we have offered you, you agree that you will be bound by any payment order issued in your name, whether or not authorized, that we accept in good faith and in compliance with the security procedure you have chosen.

**Duty to report unauthorized or erroneous payment** - You must exercise ordinary care to determine that all payment orders or amendments to payment orders that we accept that are issued in your name are authorized, enforceable, in the correct amount, to the correct beneficiary, and not otherwise erroneous. If you discover (or with reasonable care should have discovered) an unauthorized, unenforceable, or erroneously executed payment order or amendment, you must exercise ordinary care to notify us of the relevant facts. The time you have to notify us will depend on the circumstances, but that time will not in any circumstance exceed 14 days from when you are notified of our acceptance or execution of the payment order or amendment or that your account was debited with respect to the order or amendment. If you do not provide us with timely notice you will not be entitled to interest on any refundable amount. If we can prove that you failed to perform either of these duties with respect to an erroneous payment and that we incurred a loss as a result of the failure, you are liable to us for the amount of the loss not exceeding the amount of your order.

**Identifying number** - If your payment order identifies an intermediate bank, beneficiary bank, or beneficiary by name and number, we and every receiving or beneficiary bank may rely upon the identifying number rather than the name to make payment, even if the number identifies an intermediate bank or person different than the bank or beneficiary identified by name. Neither we nor any receiving or beneficiary bank have any responsibility to determine whether the name and identifying number refer to the same financial institution or person.

**Record of oral or telephone orders** - You agree that we may, if we choose, record any oral or telephone payment order or communication of amendment or cancelation.

**Notice of credit** - If we receive a payment order to credit an account you have with us, we are not required to provide you with any notice of the payment order or the credit.

**Provisional credit** - You agree to be bound by the automated clearing house association operating rules that provide that payments made to you or originated by you by funds transfer through the automated clearing house system are provisional until final settlement is made through a Federal Reserve Bank or otherwise payment is made as provided in Article 4A-403(a) of the Uniform Commercial Code.

**Refund of credit** - You agree that if we do not receive payment of an amount credited to your account, we are entitled to a refund from you in the amount credited and the party originating such payment will not be considered to have paid the amount so credited.

**Amendment of funds transfer agreement** - From time to time we may amend any term of this agreement by giving you reasonable notice in writing. We may give notice to anyone who is authorized to send payment orders to us in your name, or to anyone who is authorized to accept service.

**Cancelation or amendment of payment order** - You may cancel or amend a payment order you give us only if we receive the communication of cancelation or amendment before our cutoff time and in time to have a reasonable opportunity to act on it before we accept the payment order. The communication of cancelation or amendment must be presented in conformity with the same security procedure that has been agreed to for payment orders.

**Intermediaries** - We are not liable for the actions of any intermediary, regardless of whether or not we selected the intermediary. We are not responsible for acts of God, outside agencies, or nonsalaried agents.

**Limit on liability** - You waive any claim you may have against us for consequential or special damages, including loss of profit arising out of a payment order or funds transfer, unless this waiver is prohibited by law. We are not responsible for attorney fees you might incur due to erroneous execution of payment order.

**Erroneous execution** - If we receive an order to pay you, and we erroneously pay you more than the amount of the payment order, we are entitled to recover from you the amount in excess of the amount of the payment order, regardless of whether you may have some claim to the excess amount against the originator of the order.

**Objection to payment** - If we give you a notice that reasonably identifies a payment order issued in your name as sender that we have accepted and received payment for, you cannot claim that we are not entitled to retain the payment unless you notify us of your objection to the payment within one year of our notice to you.

**DISPUTE RESOLUTION BY BINDING ARBITRATION**

This arbitration provision is optional. If you do not wish to accept it, you must follow the instructions in paragraph (9) below to reject arbitration. Unless you timely reject arbitration, this arbitration provision is binding on you and us.

**(1) Claims Subject to Arbitration:** Except as specified in paragraph (2) below, any dispute or claim between you and us must be arbitrated if either party elects arbitration of that dispute or claim. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between you and us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory;
- claims that arose before this or any prior agreement (including, but not limited to, claims relating to advertising or disclosures for any of our products or services);
- claims for mental or emotional distress or injury not arising out of bodily injury;
- claims asserted in a court of general jurisdiction against you or us, including counterclaims, cross-claims, or third-party claims, that you or we elect to arbitrate;
- claims relating to the retention, protection, use, or transfer of information about you or any of your accounts for any of our products or services;

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

◆ claims relating to communications with you, regardless of sender, concerning any of our products or services, including emails and automatically dialed calls and text messages;

◆ claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and

◆ claims that may arise after the termination of this agreement.

In this arbitration provision only, references to "we", "us", and "our" mean the financial institution and its parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as each of those entities' agents and employees. In this arbitration provision only, references to "you" and "your" mean the account owners, all authorized or unauthorized users or beneficiaries of the account, each of those person's assignees, heirs, trustees, agents, or other representatives, and if the account owner is a business, the account owner's parents, subsidiaries, affiliates, predecessors, successors, assigns, and each of those entities' agents and employees. This arbitration agreement does not preclude you or us from bringing issues to the attention of federal, state, or local agencies. Such agencies can, if the law allows, seek relief against you or us on the other's behalf. Nor does this arbitration agreement preclude either you or us from exercising self-help remedies (including setoff), and exercising such a remedy is not a waiver of the right to invoke arbitration of any dispute. **You and we each waive the right to a trial by jury or to participate in a class action whenever either you or we elect arbitration.** This agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this agreement.

**(2) Claims Not Subject to Arbitration:** You and we agree that the following disputes or claims cannot be arbitrated:

◆ claims arising from bodily injury or death;

◆ claims seeking only individualized relief asserted by you or us in small claims court, so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction, in which case either party may elect arbitration;

◆ claims to collect or challenge debts owed pursuant to an extension of credit under a separate agreement or note (such as a separate loan agreement, promissory note, or bank card agreement), in which case the dispute over the debt shall be governed by the dispute-resolution procedures set forth in that separate agreement or note; and

◆ disputes over the scope and enforceability of this arbitration provision or whether a dispute or claim can or must be brought in arbitration.

These exclusions from arbitration are intended to be interpreted narrowly. Excluded claims must be resolved by a court with jurisdiction.

**(3) Pre-Arbitration Notice of Disputes and Informal Settlement Conference:** Before either you or we commence arbitration, the claimant must first send to the other a written Notice of Dispute ("Notice"). The Notice to us should be sent to: Legal Department, Simmons Bank, P.O. Box 7009, Pine Bluff, Arkansas 71611-7009 ("Notice Address"). The Notice to you will be sent to your address on file with your account. The Notice must include: (a) the claimant's name, mailing address, email address (if any), and phone number (if any); (b) the account number(s) at issue; (c) a description of the underlying facts and basis of the claim or dispute; and (d) the specific relief sought. The Notice must be personally signed by you (if you are the claimant) or by our representative (if we are the claimant). To help safeguard your account, if you have retained a lawyer to submit your Notice, you must also provide with the Notice your personally signed written authorization allowing us to discuss the Notice, the dispute, and your account(s) with your lawyer ("Attorney Authorization"). After receipt of the Notice, we may ask you to verify your identity and/or the fact that you authorized submission of the Notice or disclosure of account information to your lawyer ("Verification"). You agree to cooperate with any reasonable request for Verification.

No later than 60 days after a signed Notice containing all of the required information above is received (including an Attorney Authorization if you are represented by a lawyer and a Verification if requested), either party may request an individualized discussion (by telephone or videoconference) regarding settlement ("Informal Settlement Conference"). The parties must work together in good faith to select a mutually agreeable time for the Informal Settlement Conference (which can be held after the 60-day period). You and our designated representative must both personally participate in the Informal Settlement Conference, unless otherwise agreed in writing. Your and our lawyers (if any) can also participate.

Any applicable statute of limitations or contractual limitations periods will be tolled during the "Informal Resolution Period", which is the period between the date that a fully complete Notice (including an Attorney Authorization if you are represented by a lawyer and a Verification if requested) is received by the other party and the later of (i) 60 days later or (ii) the date an Informal Settlement Conference is completed, if timely requested.

**(4) Commencing Arbitration:** An arbitration proceeding cannot be commenced until after the Informal Resolution Period has ended, unless the non-claimant failed to cooperate in good faith in scheduling the Informal Settlement Conference. A court will have authority to enforce this paragraph (4), including the power to enjoin the filing or prosecution of arbitrations without first providing a fully complete Notice and participating in a timely requested Informal Settlement Conference. The court also may enjoin the assessment or collection of arbitration fees incurred as a result of such arbitrations. In addition to any other court that may have jurisdiction to hear disputes over compliance with this paragraph, the parties agree that the state and federal courts in Arkansas, Oklahoma, or Texas may hear such disputes, and the parties waive

any objections as to jurisdiction and venue in any of those courts. Further, unless prohibited by applicable law, the arbitration provider shall not accept nor administer any arbitration unless the claimant has complied with the Notice, Informal Settlement Conference, and other requirements of paragraph (3). If a process arbitrator has been appointed at the request of a party, the process arbitrator also has the same authority as a court to enforce this paragraph (4).

**(5) Arbitration Procedure and Minimum Recovery:** The arbitration will be governed by the Consumer Arbitration Rules and, if applicable, the Mass Arbitration Supplementary Rules of the American Arbitration Association ("AAA"), as modified by this arbitration provision, and will be administered by the AAA. (If the AAA is unavailable, another arbitration provider shall be selected by the parties or by the court.) The AAA rules are available online at www.adr.org or by writing to the Notice Address. As in court, you and we agree that any lawyer representing someone in arbitration certifies that they will comply with the requirements of Federal Rule of Civil Procedure 11(b), including a certification that the claim or the relief sought is neither frivolous nor brought for an improper purpose. The arbitrator is authorized to impose any sanctions available under that rule, the AAA rules, or applicable federal or state law against all appropriate represented parties and counsel. The arbitrator may consider rulings in other arbitrations involving different customers, but an arbitrator's ruling is not binding except in proceedings involving the same customer (or joint account owner). Except as provided in paragraph (7) below, the arbitrator shall apply the same substantive law that a court would apply and can award the same individualized remedies (including punitive and statutory damages and statutory attorney's fees and costs) that a court could award under applicable law. Unless you and we agree otherwise, any arbitration hearings will take place in the county of your address on file with your account. As permitted by the AAA rules, the arbitrator may conduct proceedings through an in-person hearing, by telephone or videoconference, or on the basis of documents submitted by the parties. Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based.

During the arbitration, the amount of any settlement offer shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you are entitled. If you have complied with the requirements of this paragraph and the requirements in paragraphs (3) and (4) and the arbitrator awards you an amount of money that exceeds the value of our last written settlement to you before the appointment of the arbitrator, then we will pay you $500 in lieu of any smaller award (the "Minimum Recovery"). In determining whether you are entitled to the Minimum Recovery, the arbitrator shall not consider amounts offered or awarded for attorneys' fees or costs. Any disputes as to entitlement to the Minimum Recovery shall be resolved by the arbitrator, and must be raised within 14 days of the arbitrator's ruling on the merits.

**(6) Arbitration Fees:** We will pay all AAA filing, administrative, and arbitrator fees ("AAA Fees") if we initiate an arbitration. Except as specified below, if you initiate an arbitration of claims valued at $10,000 or less, we will pay all AAA Fees, so long as you have fully complied with the requirements in paragraphs (3) and (4). In such cases, if the AAA charges you a fee, we will either pay it directly or reimburse you upon receiving a written request at the Notice Address. If, however, the arbitrator finds that you have violated the standards set forth in Federal Rule of Civil Procedure 11(b), then the payment of AAA Fees will be governed by the AAA rules. In such case, you agree to reimburse us for any amounts we paid on your behalf that are otherwise your obligation to pay under the AAA rules. In addition, if you initiate an arbitration in which you seek relief valued at greater than $10,000 (either to you or to us), the payment of these fees will be governed by the AAA rules. Notwithstanding the foregoing, if the AAA's Mass Arbitration Supplementary Rules and fee schedule apply to your arbitration, the parties will each be responsible for paying their share of any fees assessed by the AAA under those rules and fee schedule. In any case, if you cannot afford your share of such fees, you may request a fee waiver from the AAA. If the AAA declines to waive the fees (after submission of any required documentation), we will consider any reasonable written request to reimburse your share of the fees or pay them directly.

**(7) Requirement of Individual Arbitration:** The arbitrator may award relief (including monetary, declaratory, or injunctive relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate the claims of more than one person (except for the claims of joint account owners pertaining to that account), and may not otherwise preside over any form of a representative, class, or private attorney general proceeding. If, after exhaustion of all appeals, a court declares unenforceable any of these prohibitions on consolidation or non-individualized relief or proceedings, then all other arbitrable aspects of the case must be arbitrated first. After completing arbitration, the remaining non-arbitrable aspects of the case will be decided by a court.

**(8) Additional Procedures for Complex Disputes:** If the actual damages sought by either you or us in an arbitration exceeds $250,000 (not counting amounts sought for punitive, statutory, treble, or emotional harm damages or for attorneys' fees or costs), then the following additional procedures apply. First, if you are a business customer, the AAA's Commercial Arbitration Rules rather than the Consumer Arbitration Rules shall apply and, unless you and we agree otherwise, the dispute shall be resolved by a three-arbitrator panel, with each

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010  EARAIB11

party choosing one arbitrator from the AAA's roster and the two party-appointed arbitrators selecting a third, who shall preside over the panel. If you are a consumer customer, the same switch to the Commercial Arbitration Rules and a three-arbitrator panel shall apply if both you and we agree. Second, regardless of whether you are a business or consumer customer, either party may appeal the final award to a three-arbitrator panel pursuant to the AAA's Optional Appellate Rules by providing written notice within 30 days of the award. The appellant shall pay all fees and costs for the appeal unless the panel determines that the appellant is the prevailing party, in which case the panel shall have the discretion in its final award to reallocate the fees and costs as justice or otherwise applicable law requires. If there is a cross-appeal, the costs shall be borne equally by both sides, subject to reallocation by the panel in its final award as justice or otherwise applicable law requires.

**(9) Right to Reject Arbitration Provision:** If you do not wish to arbitrate, you have 30 days to reject this arbitration provision by sending a rejection notice to the Notice Address above ("Rejection Notice"). To be valid, a Rejection Notice must: (a) include your name, account number, and a statement personally signed by you that you are rejecting the arbitration provision in this agreement; and (b) be received by us within 30 days after the opening of your account. If we have notified you of changes to the arbitration provision in the agreement for your existing account (other than a change to the Notice Address), you may send us a Rejection Notice even if you did not do so earlier, so long as your Rejection Notice is postmarked on or before the effective date of the amendment to the arbitration provision. If your Rejection Notice complies with these requirements, this agreement shall be deemed not to include an arbitration provision. Rejecting this arbitration provision will not affect your other rights or responsibilities under this agreement. Nor will it affect any other arbitration agreements between you and us, such as arbitration provisions in other contracts between you and us.

**(10) Military Lending Act:** If you are a covered member of the armed forces or the dependent of a covered member within the meaning of the Military Lending Act and your agreement with us involves an extension of consumer credit under that Act, then you are not required to arbitrate disputes.

## YOUR ABILITY TO WITHDRAW FUNDS

This funds availability policy statement applies to all transaction accounts, such as checking accounts, and does not apply to savings accounts, time deposits, or money market accounts, and we may delay the availability of funds from deposits made to such accounts. For purposes of this funds availability policy, Health Savings Accounts are considered transaction accounts.

Our policy is to make funds from your cash and check deposits available to you on the first business day after the day we receive your deposit. Electronic direct deposits will be available on the day we receive the deposit. Once the funds are available, you can withdraw them in cash and we will use the funds to pay checks that you have written.

Please remember that even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for checks you deposit that are returned to us unpaid and for any other problems involving your deposit.

For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit before closing on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after closing or on a day we are not open, we will consider that the deposit was made on the next business day we are open. Deposits placed in a night depository are considered made when we remove them from the night depository. Deposits placed in a night depository during branch business hours may not be removed and processed until the next business day we are open.

If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it.

If we accept for deposit a check that is drawn on another bank, we may make funds from the deposit available for withdrawal immediately but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this disclosure for the type of check that you deposited.

### LONGER DELAYS MAY APPLY

**Case-by-case delays.** In some cases, we will not make all of the funds that you deposit by check available to you on the first business day after the day of your deposit. Depending on the type of check that you deposit, funds may not be available until the second business day after the day of your deposit. However, the first $275 of your deposits will be available on the first business day after the day of your deposit.

If we are not going to make all of the funds from your deposit available on the first business day after the day of your deposit, we will notify you at the time you make your deposit. We will also tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice by the day after we receive your deposit.

If you will need the funds from a deposit right away, you should ask us when the funds will be available.

**Safeguard exceptions.** In addition, funds you deposit by check may be delayed for a longer period under the following circumstances:
We believe a check you deposit will not be paid.
You deposit checks totaling more than $6,725 on any one day.
You redeposit a check that has been returned unpaid.
You have overdrawn your account repeatedly in the last six months.
There is an emergency, such as failure of computer or communications equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

### SPECIAL RULES FOR NEW ACCOUNTS

If you are a new customer, the following special rules will apply during the first 30 days your account is open.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $6,725 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you (and you may have to use a special deposit slip). The excess over $6,725 will be available on the seventh business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $6,725 will not be available until the second business day after the day of your deposit.

Funds from all other check deposits will be available on the seventh business day after the day of your deposit.

### SPECIAL RULES FOR MOBILE DEPOSITS

Please note that the funds availability provisions set forth above do not apply to funds deposited remotely using the mobile deposit function within our mobile banking application ("Mobile Deposits"). Rather, Mobile Deposits will generally be made available by the third business day after the day of your deposit. In some cases, however, we may delay the availability of Mobile Deposits for a longer period. In such cases, we will notify you, and we will tell you when the funds will be available. For more information about the terms applicable to the availability of Mobile Deposits, refer to the Simmons Bank Terms of Service for Online Banking.

## SPECIFIC ACCOUNT DETAILS

### BUSINESS CORE CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Fees:**

An Account Maintenance Fee of $5.00 will be charged each statement cycle unless either of the following are true:
1. You maintain a $1,000.00 minimum daily balance in this account during each day of the statement cycle, or
2. The primary owner using the same EIN/TIN as this account is the primary borrower of one or more qualifying Open Business Loan(s) with a combined Current Balance greater than $0.00 as of the last day of the statement cycle.

Business Loan means any loan or line of credit extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance or an available line of credit from which a borrower may obtain draws or advances (unless the Business Loan is charged off). Current Balance is determined by the outstanding balance of the Business Loan as of the last day of the statement cycle. Current Balance excludes, as applicable, interest which has not yet been posted and pending payments which have not posted.

A Transaction Items fee of $0.50 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 75 during a statement cycle.

A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $5,000.00 per statement cycle.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**

This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

## BUSINESS PLUS CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Fees:**

An Account Maintenance Fee of $10.00 will be charged each statement cycle unless any of the following are true:

1. You maintain a $10,000.00 minimum daily balance in this account during each day of the statement cycle, or
2. You maintain at least a $15,000.00 average daily balance in this account during the statement cycle, or
3. The primary owner using the same EIN/TIN as this account is the primary borrower of one or more qualifying Open Business Loan(s) with a combined Current Balance of at least $15,000.00, as of the last day of the statement cycle, or
4. As of the last day of the statement cycle, the primary owner using the same EIN/TIN as this account maintains a combined Total Relationship Balance on business deposit accounts and Open Business Loans of at least $25,000.00.

The average daily balance is calculated by adding the balance in the account for each day of the statement cycle and dividing that figure by the number of days in the statement cycle. Business Loan means any loan or line of credit extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance or an available line of credit from which a borrower may obtain draws or advances (unless the Business Loan is charged off). Current Balance is determined by the outstanding balance of the Business Loan as of the last day of the statement cycle. Current Balance excludes, as applicable, interest which has not yet been posted and pending payments which have not posted. Total Relationship Balance is determined by using the average ledger balance on open business deposit accounts maintained with us during the statement cycle and by combining that resulting balance with the Current Balance of all qualifying Open Business Loans.

A Transaction Items fee of $0.35 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 250 during a statement cycle.

A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $10,000.00 per statement cycle.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**

This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

## BUSINESS PRO CHECKING ACCOUNT

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

**Fees:**

An Account Maintenance Fee of $20.00 will be charged each statement cycle unless any of the following are true:

1. You maintain a $25,000.00 minimum daily balance in this account during each day of the statement cycle, or
2. You maintain at least a $30,000.00 average daily balance in this account during the statement cycle, or

3. The primary owner using the same EIN/TIN as this account is the primary borrower of one or more qualifying Open Business Loan(s) with a combined Current Balance of at least $35,000.00, as of the last day of the statement cycle, or
4. As of the last day of the statement cycle, the primary owner using the same EIN/TIN as this account maintains a combined Total Relationship Balance on business deposit accounts and Open Business Loans of at least $50,000.00.

The average daily balance is calculated by adding the balance in the account for each day of the statement cycle and dividing that figure by the number of days in the statement cycle. Business Loan means any loan or line of credit extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance or an available line of credit from which a borrower may obtain draws or advances (unless the Business Loan is charged off). Current Balance is determined by the outstanding balance of the Business Loan as of the last day of the statement cycle. Current Balance excludes, as applicable, interest which has not yet been posted and pending payments which have not posted. Total Relationship Balance is determined by using the average ledger balance on open business deposit accounts maintained with us during the statement cycle and by combining that resulting balance with the Current Balance of all qualifying Open Business Loans.

A Transaction Items fee of $0.25 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 300 during a statement cycle.

A Cash In Deposits fee of $2.50 will be charged per $1,000.00 in excess of the $30,000.00 allowance per statement cycle.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**

This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

## NON-PROFIT CHECKING ACCOUNT
### (Account available to non-profit entities)

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Fees:**

An Account Maintenance Fee of $5.00 will be charged each statement cycle unless either of the following are true:

1. You maintain a $250.00 minimum daily balance in this account during each day of the statement cycle, or
2. The primary owner using the same EIN/TIN as this account is the primary borrower of one or more qualifying Open Business Loan(s) with a combined Current Balance greater than $0.00 as of the last day of the statement cycle.

Business Loan means any loan or line of credit extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance or an available line of credit from which a borrower may obtain draws or advances (unless the Business Loan is charged off). Current Balance is determined by the outstanding balance of the Business Loan as of the last day of the statement cycle. Current Balance excludes, as applicable, interest which has not yet been posted and pending payments which have not posted.

A Transaction Items fee of $0.50 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 150 during a statement cycle.

A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $10,000.00 per statement cycle.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-48x,3r,4n 202343570-010 EARAIB11

**Additional Terms:**
This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

## SIMPLY BUSINESS 50 CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Relationship Credit** - A credit equal to the monthly Account Maintenance Fee will be applied to your account each statement cycle in which either of the following are true:
1. You maintain a $500.00 minimum daily balance from the 26th of the month preceding the end of the current statement cycle to the 25th of the month of the current statement cycle in this account or any other Simply Business 50 account with the same primary owner using the same Employee Identification Number ("EIN") or Tax Identification Number ("TIN") as this account, or
2. The primary owner using the same EIN/TIN as this account is the primary borrower of a qualifying Open Business Loan, as of the 25th of the month in which your account's current statement cycle ends.
The credit is limited to the amount of the applicable Account Maintenance Fee. If your account qualifies for the Relationship Credit, the credit will be applied to your account on or after the 25th of the month. Business Loan means any loan extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance (unless the loan is charged off) or an available line of credit from which a borrower may obtain draws or advances.

**Fees:**
An Account Maintenance Fee of $5.00 will be charged each statement cycle.
A Transaction Items fee of $0.50 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 50 during a statement cycle.
A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $5,000.00 per statement cycle.
A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.
A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**
This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

## SIMPLY BUSINESS 250 CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Relationship Credit** - A credit equal to the monthly Account Maintenance Fee will be applied to your account each statement cycle in which any of the following are true:
1. You maintain a $2,500.00 minimum daily balance from the 26th of the month preceding the current statement cycle to the 25th of the month of the current statement cycle, in this account or any other Simply Business 250 account with the same primary owner using the same EIN/TIN as this account, or
2. The primary owner using the same EIN/TIN as this account is the primary borrower of a qualifying Open Business Loan with a combined Current Balance of at least $25,000.00, as of the 25th of the month in which your account's current statement cycle ends, or
3. The primary owner using the same EIN/TIN as this account maintains a combined Total Relationship Balance on business deposit accounts and Open Business Loans of at least $25,000.00.
The credit is limited to the amount of the applicable Account Maintenance Fee. If your account qualifies for the Relationship Credit, the credit will be applied to your account on or after the 25th of the month. Business Loan means any loan extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance (unless the loan is charged off) or an available line of credit from which a borrower may obtain draws or advances. Current Balance is determined by the outstanding balance of the loan as of the 25th of the month of the statement cycle in which the calculation is occurring. Current Balance excludes, as applicable, interest which has not yet been posted and pending payments which have not posted. Total Relationship Balance is determined by using the average collected balance on open business deposit accounts maintained with us from the 26th of the prior calendar month to the 25th of the month for the statement cycle in which the calculation is occurring and by combining that resulting balance with the Current Balance of all qualifying Business Loans.

**Fees:**
An Account Maintenance Fee of $10.00 will be charged each statement cycle.
A Transaction Items fee of $0.35 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 250 during a statement cycle.
A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $10,000.00 per statement cycle.
A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.
A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**
This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

## SIMPLY BUSINESS 500 CHECKING ACCOUNT

**Rate Information** - Your interest rate and annual percentage yield may change.
**Frequency of rate changes** - We may change the interest rate on your account at any time.
**Determination of rate** - At our discretion, we may change the interest rate on your account.
**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.
**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.
**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.
**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.
**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).
**Relationship Credit** - A credit equal to the monthly Account Maintenance Fee will be applied to your account each statement cycle in which either of the following are true:
1. You maintain a $15,000.00 minimum daily balance from the 26th of the month preceding the current statement cycle to the 25th of the month of the current statement cycle in this account or any other Simply Business 500 account with the same primary owner using the same EIN/TIN as this account, or
2. The primary owner using the same EIN/TIN as this account is the primary borrower of a qualifying Open Business Loan with a combined Current Balance of at least $25,000.00 as of the 25th of the month in which your account's current statement cycle ends, or
3. The primary owner using the same EIN/TIN as this account maintains a combined Total Relationship Balance on business deposit accounts and qualifying Open Business Loans of at least $50,000.00.
The credit is limited to the amount of the applicable Account Maintenance Fee. If your account qualifies for the Relationship Credit, the credit will be applied to your account on or after the 25th of the month. Business Loan means any loan extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance (unless the loan is charged off) or an available line of credit from which a borrower may obtain draws or advances. Current Balance is determined by the outstanding balance of the loan as of the 25th of the month of the statement cycle in which the calculation is occurring. Current Balance excludes, as applicable, interest which has not yet been posted and pending payments which have not posted. Total Relationship Balance is determined by using the average collected balance on open business deposit accounts maintained with us from the 26th of the prior calendar month to the 25th of the month for the statement cycle in which the calculation is occurring and by combining that resulting balance with the Current Balance of all qualifying Business Loans.

**Fees:**
An Account Maintenance Fee of $20.00 will be charged each statement cycle.
A Transaction Items fee of $0.25 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 500 during a statement cycle.
A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $100,000.00 per statement cycle.
A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**
This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

### NON-PROFIT BUSINESS CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Relationship Credit** - A credit equal to the monthly Account Maintenance Fee will be applied to your account each statement cycle in which either of the following are true:

1. You maintain a $500.00 minimum daily balance from the 26th of the month preceding the current statement cycle to the 25th of the month of the current statement cycle in this account or any other Non-Profit Business account with the same primary owner using the same EIN/TIN as this account, or

2. The primary owner using the same EIN/TIN as this account is the primary borrower of a qualifying Open Business Loan as of the 25th of the month in which your account's current statement cycle ends.

The credit is limited to the amount of the applicable Account Maintenance Fee. If your account qualifies for the Relationship Credit, the credit will be applied to your account on or after the 25th of the month. Business Loan means any loan extended by us for business purposes excluding business and corporate credit cards, mortgage warehouse loans, and equipment finance agreements; consumer loans and any other loan issued for personal, family or household purposes do not qualify. An Open Business Loan is a Business Loan that currently has an outstanding balance (unless the loan is charged off) or an available line of credit from which a borrower may obtain draws or advances.

**Fees:**
An Account Maintenance Fee of $5.00 will be charged each statement cycle.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer-initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**
This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

### IOLTA BUSINESS CHECKING ACCOUNT
#### (Not Available in All Markets)

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

### COMMERCIAL CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Basic Activity Charges:** See attached fees. **NOTICE: Additional service charge information is available upon request.

**Additional Terms:**
The funds you keep on deposit with us may be used to offset the cost of your checking account. However, some charges such as Stop Payment Requests, NSF Charges, and other charges that may be incurred will be charged directly to this account.

**Fees:**
A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer-initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

### PUBLIC FUNDS INTEREST CHECKING ACCOUNT
#### (Account available to public entities, including state or federal government agencies, local municipalities and public agencies)

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

**Fees:**
A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

**Additional Terms:**
Account analysis may be added to this account. This account is not eligible for an Earnings Credit Rate.

### PUBLIC FUNDS ANALYZED ACCOUNT
#### (Account available to public entities, including state or federal government agencies, local municipalities and public agencies)

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Fees:**
A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

**Additional Terms:**
Account analysis may be added to this account. This account may be eligible for an Earnings Credit Rate to offset certain fees.

### MSB COMMERCIAL CHECKING ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Basic Activity Charges:** See attached fees. **NOTICE: Additional service charge information is available upon request.

**Fees:**
An account maintenance fee of $300.00 will be charged each month.

Online bill payments in excess of 20 processed through the account in a statement cycle will be assessed a $.50 fee.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer-initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B)

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

**Additional Terms:**
Account analysis may be added to this account. This account may be eligible for an Earnings Credit Rate to offset certain fees.

### FINANCIAL INSTITUTIONS ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Additional Terms:**
The funds you keep on deposit with us may be used to offset the cost of your checking account. However, some charges such as Stop Payment Requests, NSF Charges, and other charges that may be incurred will be charged directly to this account.

**Basic Activity Charges:** See attached fees. **NOTICE: Additional service charge information is available upon request.

**Fees:**
Online bill payments in excess of 20 processed through the account in a statement cycle will be assessed a $.50 fee.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer-initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

### FINANCIAL INSTITUTION PLUS ACCOUNT

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

**Additional Terms:**
The funds you keep on deposit with us may be used to offset the cost of your checking account. However, some charges such as Stop Payment Requests, NSF Charges, and other charges that may be incurred will be charged directly to this account.

**Basic Activity Charges:** See attached fees. **NOTICE: Additional service charge information is available upon request.

**Fees:**
Online bill payments in excess of 20 processed through the account in a statement cycle will be assessed a $.50 fee.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer-initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

### PUBLIC FUNDS-LITE ACCOUNT
**(Account available to public entities, including state or federal government agencies, local municipalities and public agencies)**

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Minimum balance to avoid imposition of fees** - A Monthly Service Charge fee of $25.00 will be imposed every statement cycle if the average daily balance for the cycle falls below $500.00. The average daily balance is calculated by adding the principal in the account for each day of the period and dividing that figure by the number of days in the period.

**Additional Terms:**
Account analysis may be added to this account. This account is not eligible for an Earnings Credit Rate.

**Fees:**
A Transaction Items fee of $0.50 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 250 during a statement cycle.

A Cash In Deposits fee of $0.75 will be charged per $1,000.00 of cash deposited in excess of $5,000.00 per statement cycle.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

### TREASURY MANAGEMENT-LITE ACCOUNT

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Minimum balance to avoid imposition of fees** - A Monthly Service Charge fee of $25.00 will be imposed every statement cycle if the average daily balance for the cycle falls below $500.00. The average daily balance is calculated by adding the principal in the account for each day of the period and dividing that figure by the number of days in the period.

**Additional Terms:**
Account analysis may be added to this account. This account is not eligible for an Earnings Credit Rate.

**Fees:**
A Transaction Items fee of $0.50 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 250 during a statement cycle.

A Cash In Deposits fee of $0.75 will be charged per $1,000.00 of cash deposited in excess of $5,000.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer initiated activity on the account for more than 365 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents, and only apply to accounts when the daily balance falls below $1,000.00 any day of the statement cycle.

### WHL RESIDUAL CHECKING ACCOUNT
**(Account available to mortgage warehouse lending customers)**

**Additional Terms:**
Account analysis may be added to this account. This account is not eligible for an Earnings Credit Rate. This account is not eligible for overdraft privilege.

**Fees:**
A Transaction Items fee of $0.35 will be charged for each check, debit, deposit, credit, item deposited, and electronic item in excess of 250 during a statement cycle.

A Cash In Deposits fee of $2.50 will be charged per $1,000.00 of cash deposited in excess of $10,000.00 per statement cycle.

### SIMPLY SAVINGS BUSINESS ACCOUNT

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every quarter. Interest will be credited to your account every quarter.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

**Minimum balance to avoid imposition of fees** - A service charge fee of $5.00 will be imposed monthly if the balance in the account falls below $100.00 any day of the cycle.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

**Fees:**

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

A Dormant Account Fee of $10.00 per month will be imposed if there is no customer-initiated activity on the account for more than 730 days. Customer-initiated activity includes (A) a communication between the bank and the customer in which (i) the customer requests the account status be changed to active and (ii) the customer's identity is authenticated by the bank, (B) deposits to the account, or (C) withdrawals from the account, but does not include the payment of interest or the assessment of fees and charges by the bank. Dormant Account Fees do not apply to accounts owned by Texas residents and only apply to accounts when the daily balance falls below $2,500.00 any day of the statement cycle.

### MONEY MARKET SAVINGS BUSINESS ACCOUNT

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Minimum balance to avoid imposition of fees** - A monthly service charge fee of $10.00 will be imposed every statement cycle if the balance in the account falls below $2,500.00 any day of the cycle.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

**Fees:**

Fifty (50) "foreign" deposited items and fifty (50) "on us" deposited items may be made at no charge in each monthly statement cycle. A transaction charge of $0.25 will be assessed on each additional deposited item.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

**Additional Terms:**

This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

### PUBLIC FUNDS MONEY MARKET ACCOUNT
#### (Account available to public entities, including state or federal government agencies, local municipalities and public agencies)

**Rate Information** - Your interest rate and annual percentage yield may change.

**Frequency of rate changes** - We may change the interest rate on your account at any time.

**Determination of rate** - At our discretion, we may change the interest rate on your account.

**Compounding and crediting frequency** - Interest will be compounded every month. Interest will be credited to your account every month.

**Effect of closing an account** - If you close your account before interest is credited, you will not receive the accrued interest.

**Minimum balance to open the account** - There is no minimum balance to open this account. A minimum of $0.01 must be deposited within 45 days of account opening. Accounts not funded within 45 days of opening may be closed.

**Minimum balance to avoid imposition of fees** - A monthly service charge fee of $10.00 will be imposed every statement cycle if the balance in the account falls below $2,500.00 any day of the cycle.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

**Fees:**

Fifty (50) "foreign" deposited items and fifty (50) "on us" deposited items may be made at no charge in each monthly statement cycle. A transaction charge of $0.25 will be assessed on each additional deposited item.

A $5.00 Paper Statement Fee will be imposed every statement cycle in which you receive a paper statement. You may avoid the Paper Statement Fee by enrolling to receive eStatements instead of paper statements for this account.

**Additional Terms:**

This account type is eligible for Overdraft Privileges. Please see the Overdraft Privilege Disclosure for additional information.

### CERTIFICATE OF DEPOSIT

**Rate Information** - The interest rate on your account is _____ % with an annual percentage yield of _____ %. You will be paid this rate until first maturity.

**Compounding frequency** - Interest will be compounded every quarter.

**Crediting frequency** - Interest will be credited to your account every quarter. Alternatively, you may choose to have interest paid to you or to another account rather than credited to this account. The annual percentage yield assumes interest remains on deposit until maturity and that a withdrawal will reduce earnings.

**Minimum balance to open the account** - You must deposit $500.00 to open this account.

**Minimum balance to obtain the annual percentage yield disclosed** - You must maintain a minimum balance of $500.00 in the account each day to obtain the disclosed annual percentage yield.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue on the business day you deposit noncash items (for example, checks).

**Transaction limitations:**

You may not make any deposits into your account before maturity.

You may make withdrawals of principal from your account before maturity. Principal withdrawn before maturity is included in the amount subject to early withdrawal penalty.

You can only withdraw interest credited in the term before maturity of that term without penalty. You can withdraw interest only on the crediting dates.

**Time requirements** - Your account will mature _____ .

**Early withdrawal penalties** (a penalty will be imposed for withdrawals before maturity) -
  ◆ If your account has an original maturity of less than one year:
    The fee imposed will equal 180 days interest on the amount withdrawn.
  ◆ If your account has an original maturity of one year or more:
    The fee imposed will equal 360 days interest on the amount withdrawn.

In certain circumstances such as the death or incompetence of an owner of this account, the law permits, or in some cases requires, the waiver of the early withdrawal penalty. Other exceptions may also apply, for example, if this is part of an IRA or other tax-deferred savings plan.

**Withdrawal of interest prior to maturity** - The annual percentage yield assumes interest will remain on deposit until maturity. A withdrawal will reduce earnings.

**Automatically renewable time account** - This account will automatically renew at maturity. You may prevent renewal if you withdraw the funds in the account at maturity (or within the grace period mentioned below, if any) or we receive written notice from you within the grace period mentioned below, if any. If you prevent renewal, interest will not accrue after final maturity.

Each renewal term will be the same as the original term, beginning on the maturity date. The interest rate will be the same we offer on new time deposits on the maturity date which have the same term, minimum balance (if any) and other features as the original time deposit. In the event a special CD term is offered, the CD will renew at the term closest to the CD special term.

You will have ten calendar days after maturity to withdraw the funds without a penalty.

### JUMBO CERTIFICATE OF DEPOSIT

**Rate Information** - The interest rate on your account is _____ % with an annual percentage yield of _____ %. You will be paid this rate until first maturity.

**Compounding frequency** - Interest will be compounded every quarter.

**Crediting frequency** - Interest will be credited to your account every quarter. Alternatively, you may choose to have interest paid to you or to another account rather than credited to this account. The annual percentage yield assumes interest remains on deposit until maturity and that a withdrawal will reduce earnings.

**Minimum balance to open the account** - You must deposit $100,000.00 to open this account.

**Minimum balance to obtain the annual percentage yield disclosed** - You must maintain a minimum balance of $100,000.00 in the account each day to obtain the disclosed annual percentage yield.

**Daily balance computation method** - We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

**Accrual of interest on noncash deposits** - Interest begins to accrue on the business day you deposit noncash items (for example, checks).

**Transaction limitations:**

You may not make any deposits into your account before maturity.

You may make withdrawals of principal from your account before maturity. Principal withdrawn before maturity is included in the amount subject to early withdrawal penalty.

You can only withdraw interest credited in the term before maturity of that term without penalty. You can withdraw interest only on the crediting dates.

**Time requirements** - Your account will mature _____ .

**Early withdrawal penalties** (a penalty will be imposed for withdrawals before maturity) -

- ◆ If your account has an original maturity of less than one year:
  The fee imposed will equal 180 days interest on the amount withdrawn.
- ◆ If your account has an original maturity of one year or more:
  The fee imposed will equal 360 days interest on the amount withdrawn.

In certain circumstances such as the death or incompetence of an owner of this account, the law permits, or in some cases requires, the waiver of the early withdrawal penalty. Other exceptions may also apply, for example, if this is part of an IRA or other tax-deferred savings plan.

**Withdrawal of interest prior to maturity** - The annual percentage yield assumes interest will remain on deposit until maturity. A withdrawal will reduce earnings.

**Automatically renewable time account** - This account will automatically renew at maturity. You may prevent renewal if you withdraw the funds in the account at maturity (or within the grace period mentioned below, if any) or we receive written notice from you within the grace period mentioned below, if any. If you prevent renewal, interest will not accrue after final maturity.

Each renewal term will be the same as the original term, beginning on the maturity date. The interest rate will be the same we offer on new time deposits on the maturity date which have the same term, minimum balance (if any) and other features as the original time deposit. In the event a special CD term is offered, the CD will renew at the term closest to the CD special term.

You will have ten calendar days after maturity to withdraw the funds without a penalty.

### COMMON FEATURES

Please refer to our separate rate sheet for current interest rate and annual percentage yield information for our interest-bearing accounts and to our separate Schedule of Fees and Charges and other fee schedules or pro formas for additional information about fees and charges that apply to the accounts described above. Please note, accrued interest is not credited until it equals at least $0.01. An interest accrual that totals less than $0.01 is carried forward to be added to future accruals.

See the section titled "Your Account" for additional account and rate information.

---

### YOUR ACCOUNT

These are the accounts you have opened or inquired about. Further details about these accounts are inside this disclosure. If the figures are not filled in, please see the insert that is with this disclosure or your periodic statement.

☐ _____

☐ _____

The interest rate for your account is _____ %

with an annual percentage yield of _____ %.

☒ Business Pro Checking _____

**Rate Information:**

- ◆ Tier 1 - If your daily balance is $ 1,000,000. or more, the interest rate paid on the entire balance in your account will be .1000 % with an annual percentage yield of 0.10 %.

- ◆ Tier 2 - If your daily balance is more than $ 249,999.99 , but less than $ 1,000,000. , the interest rate paid on the entire balance in your account will be .050 % with an annual percentage yield of 0.05 %.

- ◆ Tier 3 - If your daily balance is more than $ 99,999.99 , but less than $ 250,000.00 , the interest rate paid on the entire balance in your account will be .020 % with an annual percentage yield of 0.02 %.

- ◆ Tier 4 - If your daily balance is more than $ 49,999.99 , but less than $ 100,000.00 , the interest rate paid on the entire balance in your account will be .020 % with an annual percentage yield of 0.02 %.

- ◆ Tier 5 - If your daily balance is more than $ 24,999.99 , but less than $ 50,000.00 , the interest rate paid on the entire balance in your account will be .020 % with an annual percentage yield of 0.02 %.

- ◆ Tier 6 - If your daily balance is $ 24,999.99 or less, the interest rate paid on the entire balance in your account will be .0200 % with an annual percentage yield of 0.02 %.



Member FDIC | simmonsbank.com

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
AIB-B 8/1/2019 Custom TCM-4Bx,3r,4n 202343570-010 EARAIB11

v.2025.1